897 F.2d 1487
 58 USLW 2554
 Dale CONNER; Linda Conner, Plaintiffs-Appellants/Cross-Appellees,
v.
CITY OF SANTA ANA; Robert C. Bobb; Edward J. Cooper;
Raymond C. Davis; C.R. Miller, et al.,
Defendants-Appellees/Cross-Appellants.
 Nos. 87-6683, 88-5510 to 88-5512 and 88-5536.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 2, 1989.
Decided March 1, 1990.
 
 William A. Snyder, Mission Viejo, Cal., for plaintiffs-appellants/cross-appellees.
 Gayle K. Tonon, Kinkle, Rodiger & Spriggs, Santa Ana, Cal., and Brian M. Brown, Tustin, Cal., for defendants-appellees/cross-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before POOLE, BEEZER and TROTT, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 These consolidated appeals stem from the City of Santa Ana's removal of automobiles from the Conners' private property after the Santa Ana City Council determined that the automobiles constituted a public nuisance. The parties appeal and cross-appeal from the judgment, grants of summary judgment, the granting of permanent injunctive relief, and from the award of attorneys fees. We affirm in part and reverse in part.
 
 
 2
 City of Santa Ana police were advised that the Conners were storing several old and seemingly inoperable automobiles on their property. Believing that the automobiles may have constituted a public nuisance under the Santa Ana County municipal code,[1] the police investigated on July 1, 1983. Without a warrant and without the Conners' permission, the police scaled the fence on the Conner property and inspected the automobiles. The police inspected the vehicles and recorded the Vehicle Identification Numbers (VIN) and license plate numbers from the automobiles. That same day the City mailed to the Conners notice of its intention to abate and remove the automobiles. Pursuant to Sec. 16-118 of the municipal code, the Conners asked for and received a hearing from the police department. The police department hearing officer found that the automobiles constituted a public nuisance, and that they should be abated. Pursuant to Sec. 16-120 of the municipal code, the Conners appealed this determination to the Santa Ana City Council. The City Council appointed a hearing officer to receive evidence and statements and to file a recommendation. The hearing officer upheld the reasonableness of the police actions but recommended a thirty-day extension of time in which the Conners could prove the automobiles were operable. On February 19, 1985, the City Council adopted the hearing officer's recommendation, except that it rejected the recommended thirty-day extension of time.
 
 
 3
 On June 7, 1985, the police called defendants California Towing and A & P Towing[2] to the Conners' property. City officials, again without a warrant, broke down the fence surrounding the Conner property and removed two of the vehicles from the property. The vehicles were hauled away and later destroyed.
 
 
 4
 The Conners brought this suit under 42 U.S.C. Sec. 1983[3] against all persons involved in the searches, seizures, and the towing of their automobiles. The Conners' claims were based upon the warrantless searches and seizures and on the denial of due process. The district court granted summary judgment to the Conners against the City on the July 1, 1983, warrantless search and seizure. All non-municipal defendants were granted qualified immunity with regard to the claim based upon the July 1, 1983, entry. Summary judgment was granted to all defendants on the June 7, 1985, warrantless seizure. The district court granted summary judgment against the Conners on each of their due process claims. The question of damages for the City's unconstitutional July 1, 1983, warrantless search went to the jury and resulted in damages of $71,000.00. The district court also granted injunctive relief prohibiting further warrantless entries onto the Conner property. The Conners' attorney was awarded fees pursuant to 42 U.S.C. Sec. 1988. These appeals and cross-appeals followed.
 
 
 5
 The grant or denial of summary judgment is a question of law reviewed de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986).
 
 SEARCH AND SEIZURE
 
 6
 It is clear that the warrant requirement of the fourth amendment[4] applies to entries onto private land to search for and abate suspected nuisances. Michigan v. Tyler, 436 U.S. 499, 504-07, 98 S.Ct. 1942, 1947-49, 56 L.Ed.2d 486 (1978); Camara v. Municipal Court, 387 U.S. 523, 530, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967). On the strength of those cases, the district court granted the Conners' summary judgment motion against the City of Santa Ana as to the July 1, 1983 warrantless entry. The City does not appeal from this grant of summary judgment.
 
 
 7
 The district court concluded, however, that the warrantless seizure of the automobiles on June 7, 1985, did not violate the fourth amendment. The court held that the second entry onto the Conners' property was reasonable and did not require a warrant because it was preceded by numerous hearings and appeals. The court stated: "it is surely not reasonable to require a warrant to abate every nuisance ... where the citizens involved have already had a full and fair procedure wherein they had the opportunity to contest the need and propriety of the abatement in their specific case." We disagree.
 
 
 8
 Entry to abate a known nuisance falls within the warrant requirement of the fourth amendment. In Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the Supreme Court stated:
 
 
 9
 The decisions of this Court firmly establish that the Fourth Amendment extends beyond the paradigmatic entry into a private dwelling by a law enforcement officer in search of the fruits or instrumentalities of crime. As this Court stated in Camara v. Municipal Court, 387 U.S. 523, 528 [87 S.Ct. 1727, 1730, 18 L.Ed.2d 930], the "basic purpose of this Amendment ... is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." The officials may be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection. The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public. See v. Seattle, 387 U.S. 541 [87 S.Ct. 1737, 18 L.Ed.2d 943]; Marshall v. Barlow's, Inc., [436 U.S. 307], at 311-313 [98 S.Ct. 1816, 1819-21, 56 L.Ed.2d 305]. These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment.
 
 
 10
 436 U.S. at 504-05, 98 S.Ct. at 1947-48 (emphasis added). We do not agree that Tyler can be distinguished on the ground that it endorses a warrant requirement only for abatement of suspected nuisances. California courts have rejected, for purposes of the warrant requirement, any distinction between inspection and abatement of a declared public nuisance. In Gleaves v. Waters, 175 Cal.App.3d 413, 220 Cal.Rptr. 621 (1985), the court held that, absent exigent circumstances, "officials engaged in the abatement of a public nuisance must have a warrant" to enter an enclosed backyard; "it is the prospective invasion of constitutionally protected interests by an entry onto property and not the purpose of the entry which calls forth the warrant requirement." 220 Cal.Rptr. at 623, 625. Furthermore, the Supreme Court has held in other contexts that a warrant is required for entry even after violation of a law is established. In G.M. Leasing Corp. v. United States, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Court held unequivocally that non-exigent, warrantless entry onto a taxpayer's private property to seize assets in satisfaction of assessed tax deficiencies violates the warrant requirement of the fourth amendment. Id. at 354, 97 S.Ct. at 629.
 
 
 11
 The City next argues that the second entry was reasonable and no warrant was required. The fourth amendment states:
 
 
 12
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 
 
 13
 U.S. Const. amend. IV. The Supreme Court has instructed that:
 
 
 14
 In construing this command [of reasonableness], there has been general agreement that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant."
 
 
 15
 Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973) (quoting Camara v. Municipal Court, 387 U.S. at 528-29, 87 S.Ct. at 1730-31). See also Katz v. United States, 389 U.S. 347, 356-57, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) ("Over and over again this Court has emphasized that the mandate of the [Fourth] Amendment requires [that] ... searches conducted outside the judicial process ... are per se unreasonable ... subject only to a few specifically established and well-defined exceptions.") (citation omitted). The City of Santa Ana does not contend that the June 7 search of the Conner property falls within any of the "carefully defined classes of cases" which permit warrantless searches or seizures.[5] Instead, the City argues that it afforded the Conners sufficient "process" to make proper under the fourth amendment the warrantless entry onto, and subsequent seizure of, the Conners' property.
 
 
 16
 We are unable to agree. Neither Tyler nor any case of which we are aware has created a "process" exception to the warrant requirement. The taxpayer in G.M. Leasing, for example, had numerous opportunities both before and after the taxes were assessed to rectify errors in the amount of the assessment, but the availability of such process to the taxpayer played no role in the Court's straightforward application of the fourth amendment to the warrantless seizures there at issue. See 429 U.S. at 341, 342 n. 5, 97 S.Ct. at 623, 623-24 n. 5. On the contrary, the Court held that the validity of the tax assessments established only probable cause for the seizures and did not establish the reasonableness of entry onto private property without a warrant. Id. at 358, 97 S.Ct. at 631 (recognizing tax statute as "an authorization for all forms of seizure, but as silent on the subject of intrusions into privacy") (emphasis in original).
 
 
 17
 Similarly, the abatement hearings here established only the validity of the seizure. The district court found, in imposing a warrant requirement for the first search, that the Conners had a reasonable expectation of privacy in their enclosed, fenced yard. That expectation of privacy remained the same before and after the hearings. As the G.M. Leasing Court remarked:
 
 
 18
 It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property ... situated on private premises to which access is not otherwise available for the seizing officer.
 
 
 19
 Id. at 354, 97 S.Ct. at 629 (emphasis added).[6] Cf. Michigan v. Clifford, 464 U.S. 287, 292-93, 104 S.Ct. 641, 646-47, 78 L.Ed.2d 477 (1984) (reasonable privacy expectation remains in fire-damaged premises, even when occupancy is impossible).
 
 
 20
 We conclude that the fourth amendment protected the Conners from the City's warrantless entry onto their property and from the warrantless seizure of their automobiles. The warrant requirement applied to the City when, without the Conners' consent, it broke down their fence, entered their property and seized the automobiles, regardless of how "reasonable" the warrantless search and seizure appeared in light of the pre-seizure process afforded the Conners. Because a search and seizure of the Conners' property occurred without any judicial authorization, the district court erred in granting summary judgment against the Conners for their claim based on the June 7, 1985 warrantless search and seizure. Accordingly, the grant of summary judgment is reversed and the case remanded for trial on that claim.[7]
 
 QUALIFIED IMMUNITY
 
 21
 The district court granted qualified immunity to all defendants except the City of Santa Ana. Qualified immunity from suit must be granted when the law allegedly violated is not clearly established. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In this case the district court concluded that the law was not clearly established because the municipal code seemingly authorized the warrantless searches and seizures. First, the municipal code does not state that warrants are not required.[8] Second, in light of Tyler it is difficult to understand how the law requiring a warrant was anything less than clear. Qualified immunity was erroneously granted to the non-municipal defendants.[9] The reasonableness of the non-municipal defendants' actions is a question of fact for the jury. Benigni v. City of Hemet, 879 F.2d 472, 479-80 (9th Cir.1988); Brady v. Gebbie, 859 F.2d 1543, 1556 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). Accordingly, the Conners' fourth amendment claim may proceed to trial against all defendants.
 
 DUE PROCESS
 
 22
 The Conners make several arguments that the defendants deprived them of their property without due process. The district court granted summary judgment against the Conners on their due process claims. We affirm.
 
 
 23
 The Conners first argue that they were deprived of due process because there was no judicial involvement in the process depriving them of their automobiles. We reject this argument. The fundamental requirements of procedural due process are notice and an opportunity to be heard before the government may deprive a person of a protected liberty or property interest. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). There is no requirement, however, that a court must be involved in the process in order to comply with the constitution. Jordan v. City of Lake Oswego, 734 F.2d 1374, 1376 n. 1 (9th Cir.1984) ("There is no constitutional requirement that the decisionmaker be an uninvolved person when a property interest protected by due process is at stake."); Price v. City of Junction, Texas, 711 F.2d 582, 589 n. 5 (5th Cir.1983) ("There is no requirement that the impartial tribunal be a judicial tribunal."); Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361, 369 n. 18 (9th Cir.1976) (same). See also Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) (judicial involvement not required to meet the due process demand of an impartial tribunal). The Conners were afforded notice and several opportunities to be heard before their automobiles were seized by the City. Moreover, the Conners did have a right to judicial review of the City Council's action under Cal.Civ.Pro.Code Sec. 1094.5, a right which they did not exercise.
 
 
 24
 The Conners next argue that the municipal ordinance authorizing seizure of the automobiles constitutes an unconstitutional exercise of the City's delegated police power. This argument is meritless. The ordinance was authorized by state law and was within the police powers of the state. Cal.Gov't Code Secs. 38771, 38773.5; Cal.Veh.Code Sec. 22660 (authorizing municipal ordinances pertaining to inoperative vehicle nuisances); Price, 711 F.2d at 589 (dismissing a nearly identical argument). See also 6A McQuillen Mun. Corp., Sec. 24.28 (3rd ed.1988).
 
 
 25
 The Conners next argue that they were denied due process because they were entitled to a jury trial on the question of whether the automobiles constituted a nuisance. They rely on People v. One 1941 Chevrolet Coupe, 37 Cal.2d 283, 231 P.2d 832 (1951). Their reliance is misplaced. One 1941 Chevrolet Coupe involved a criminal forfeiture proceeding and the court held that the right to a jury trial therefore attached. The City was proceeding to abate a nuisance; it was not proceeding under a criminal forfeiture statute. Therefore, a jury was not required to determine whether the Conners' automobiles constituted a nuisance under the City code. Cf. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965) (noting that forfeiture actions are quasi-criminal in nature).
 
 
 26
 Finally, the Conners contend that they were deprived of due process because illegally seized evidence--the vehicle identification numbers--was used as evidence in the pre-seizure hearings. We reject this argument. See INS v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (confession obtained in violation of fourth amendment not excludable in a civil deportation hearing); United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (fourth amendment did not require exclusion of illegally seized evidence in a civil tax enforcement case).
 
 
 27
 Accordingly, the district court correctly granted summary judgment against the Conners on their due process claims.
 
 DAMAGES
 
 28
 The City challenges the sufficiency of the evidence on the issue of damages. An award of damages will be upheld if supported by substantial evidence and will not be disturbed unless it is clearly unsupported by the evidence. LuMetta v. U.S. Robotics, Inc., 824 F.2d 768, 770 (9th Cir.1987). We have reviewed the trial record and conclude that the amount of damages awarded by the jury is supported by sufficient evidence. Accordingly, we affirm the damages awarded.
 
 INJUNCTIVE RELIEF
 
 29
 The district court granted the Conners permanent injunctive relief from further warrantless entries. We review the grant of permanent injunctive relief for an abuse of discretion. Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021-22 (9th Cir.1985), cert. denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). The relief will be upheld when "those against whom [it] is issued ... receive fair and well-defined notice of what the injunction prohibits." Id. at 1022. The district court granted the relief based upon its finding, unchallenged on appeal, that the City had violated the Conners' right to be free from unreasonable searches and seizures.
 
 
 30
 The City argues that the injunction is too vague as it prohibits warrantless entries onto the "curtilage of plaintiffs' home or homes." The City argues that the word "curtilage" renders the injunction impermissibly vague. We cannot agree. The meaning of curtilage may not be exact; it does, however, give sufficient notice to the City. See United States v. Dunn, 480 U.S. 294, 301 & n. 4, 107 S.Ct. 1134, 1139 & n. 4, 94 L.Ed.2d 326 (1987) (curtilage includes areas which harbor intimate activities of domestic life, usually to include fenced-in areas of property). The City also argues, in essence, that the injunction impermissibly encroaches upon their police power to make warrantless searches. We disagree. U.S. Const. amend IV.
 
 
 31
 We find no abuse of discretion and affirm the district court's grant of injunctive relief.
 
 ATTORNEY FEES
 
 32
 The City and the Conners contend that the amount of fees awarded was an abuse of discretion. See Cunningham v. County of Los Angeles, 879 F.2d 481, 483 (9th Cir.1989) (fee awards are reviewed for an abuse of discretion), cert. denied, --- U.S. ----, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). The district court thoroughly and exhaustively considered the fee application and considered all factors relevant to the award of fees under Sec. 1988. See id., 879 F.2d at 484-89 (setting forth standards applicable to fee determinations). The district court reduced by 40% the total number of hours awarded to reflect only partial success on the merits. The City contends that the district court incorrectly assessed fees against it and that the 40% reduction was too small.[10] The Conners' attorney argues that the reduction was too great. We disagree and conclude that the district court's careful consideration of all relevant factors produced an award of fees well within its discretion. Accordingly, we affirm the grant of fees.[11]
 
 
 33
 The City and the Conners seek fees for this appeal. We deny the City's request for fees because the Conners' unsuccessful claims were not frivolous, unreasonable or without foundation. See Jensen v. City of San Jose, 806 F.2d 899, 901 (9th Cir.1986) (en banc) (where plaintiff's claims are not frivolous no fees are to be awarded to defendant); Boatowners and Tenants Association v. Port of Seattle, 716 F.2d 669, 674 (9th Cir.1983) (same).
 
 
 34
 We award fees to the Conners' attorney for the issues on which the Conners have succeeded on the merits in this appeal. They have not succeeded on the merits on the issues to be reversed and remanded for further proceedings. See Procter v. Consolidated Freightways Corp., 795 F.2d 1472, 1478-79 (9th Cir.1986). They have, however, succeeded on the merits in defending the appeal with regard to: 1) the damages awarded, 2) the injunctive relief, and 3) the attorney fee award. Fees are appropriate for the time expended on appeal on those issues. Chalmers v. County of Los Angeles, 796 F.2d 1205, 1213 (1986), amended in unrelated part, 808 F.2d 1373 (9th Cir.1987).
 
 
 35
 Counsel shall file a properly supported fee application detailing the hours expended on appeal upon the foregoing three issues. That fee application shall be submitted to the clerk of this court on or before March 31, 1990. Objections thereto, if any, shall be filed fifteen days thereafter.
 
 CONCLUSION
 
 36
 The district court is reversed on the grant of summary judgment regarding the June 7, 1985 warrantless search and seizure and on the grant of summary judgment to the non-municipal defendants on the ground that they were entitled to qualified immunity. We affirm the district court on all other challenges. Accordingly, we remand to the district court for further proceedings consistent with this opinion.
 
 
 37
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 TROTT, Circuit Judge, dissenting:
 
 38
 I respectfully believe the majority opinion elevates form over substance. Guided by the text of the Fourth Amendment, its purpose, and the time honored method of determining which warrantless searches and seizures are "reasonable" and which are not, I find no unreasonable search or seizure with respect to the warrantless entry after pre-abatement adversary hearings. Nor do I find any invasion of privacy. The lack of a case squarely on point blessing what happened here does not mean it cannot be proper: it only means that we must use analysis to decide this case, not round pegs and round holes. Moreover, the opinion raises problems with regard to the doctrine of qualified immunity.
 
 The Search and Seizure
 
 39
 The majority opinion appears fixated on what the police did not have (a warrant) when it should be examining both what the City did and what the Conners received in terms of process before the second entry. Instead, the majority opinion contains a statement that I find extraordinary under the circumstances of this unusual case: "... [the second entry and seizure violated the Fourth Amendment] regardless of how 'reasonable' the warrantless search and seizure appeared in light of the pre-seizure process afforded the Conners." Majority opinion at p. 1492. This to me is tantamount to sweeping all the constitutional pieces off the chess board without following the rules of the contest. When you step back from the trees and look at the forest, it becomes clear that the values designed to be protected by the Fourth Amendment were undisturbed by what the City did--and how it did it--in this case. A warrant--and the process used to attain it--would have added nothing to the Conners' privacy in the light of the equivalent substitute process they did receive, or to the independent review to which they were entitled.
 
 
 40
 I do not quarrel with a finding that the initial July 1, 1983 warrantless entry for the purpose of inspecting the alleged nuisance was improper and a violation of the constitutional right to be free of illegal searches and seizures. But with respect to the warrantless second entry on June 7, 1985, I agree with the district court's reasoning, which was set forth in a thoughtful and informed Statement of Uncontroverted Facts and Conclusions of Law as follows:
 
 
 41
 8. As the [c]ourt noted at the June 29, 1987 hearing, the legality of the June 7, 1985 entry is more problematic. At that point, pre-abatement hearings had been held and the vehicles had actually been found to be public nuisances. The officers and tow truck operators entered plaintiffs' property solely to abate the previously declared nuisances. It is this crucial distinction between the first and second entries that troubled the [c]ourt and caused it to require further briefing.
 
 
 42
 After thorough consideration of the issue, the [c]ourt now determines that the July 7, 1985 entry to abate the nuisances did not violate plaintiffs' constitutional rights.
 
 
 43
 As stated above, the [c]ourt recognizes that citizens have a right to be free from unauthorized searches and seizures in their enclosed backyard. However, that does not mean that in a case where there has been notice, pre-abatement hearings, appeal procedures, and (under California law) the right to seek review in the [c]ourt system, those rights of the plaintiffs are violated merely because a warrant was not obtained prior to the entry to carry out the order of abatement. An entry for the purpose of carrying out an abatement cannot be said to be unreasonable under these circumstances. Indeed, to require a warrant after all of the above procedures have taken place would impose untoward burdens upon local governments as well as the courts. This does not mean that a court should set aside the Constitution whenever it interferes with what some would consider to be efficient governmental operations, but it is surely not reasonable to require a warrant to abate every nuisance (for example, weeds, trash and wrecked cars) where the citizens involved have already had a full and fair procedure wherein they had the opportunity to contest the need and propriety of the abatement in their specific case.
 
 
 44
 Cases that deal with an entry to determine whether a nuisance exists on the property, e.g., Gleaves v. Waters, 175 Cal.App.3d 413, 220 Cal.Rptr. 621 (1985), are not the same as this one. To allow entries into backyards for the purpose of inspecting the premises to find nuisances would effectively repeal the protections of the Fourth Amendment. However, that is not the situation where, as here, the presence of the nuisance is known, and has actually been determined in hearings that gave the citizen the full right to protect his interests and the opportunity to voluntarily abate the nuisance.
 
 
 45
 Therefore, the [c]ourt determines that when the public officials entered the plaintiffs' backyard to abate a known, visible, nuisance after first conducting the extensive pre-abatement procedure used here, they did not commit an illegal search and seizure. Again, it should be clear that this decision is not intended to indicate there is no Fourth Amendment protection in one's enclosed backyard. Nor does the [c]ourt decide that it would be proper to forceably enter a house to abate what might be a nuisance located within the actual confines of the house. The [c]ourt only holds that the entry in this case did not violate the Fourth Amendment. Therefore, summary judgment should be, and is GRANTED for defendants on that issue.
 
 
 46
 An illegal search within the meaning of the Fourth Amendment occurs whenever one's reasonable expectation of privacy is violated by unreasonable governmental intrusion. Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). As was stated by the Supreme Court, the "basic purpose of this Amendment ... is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967) (emphasis added).
 
 
 47
 The reasons justifying a determination that the first entry violated the Fourth Amendment--reasonable expectations of privacy--do not appear to apply to the second entry and seizure. At the time of the second entry, there had been two years of notice, two pre-abatement hearings, appeal procedures, and the right to seek review in the state court system. At each step of the way, it was determined that a nuisance indeed existed, and that it was to be abated.
 
 
 48
 The second entry onto the Conners' property for the specific purpose of abating the nuisance was, in my view, neither unreasonable nor arbitrary. The Conners, or any other reasonable person, had to have seen it coming: the handwriting was on the wall. Regardless of what the Conners' subjective expectations may have been at that point, no reasonable privacy interests can be said to have remained. See Michigan v. Clifford, 464 U.S. 287, 292, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984) ("The test essentially is an objective one").
 
 
 49
 The majority opinion seems to imply that a judicial warrant is required whenever an entry is made to abate an established nuisance irrespective of the underlying circumstances. Despite intensive research, I have been unable to uncover a case, state or federal, that supports directly that proposition. Dicta in Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) on which the majority opinion largely relies, certainly is not supportive of the proposition. See Id. at 504, 98 S.Ct. at 1947 ("Their purpose may be to locate and abate a suspected public nuisance. . .") (emphasis added).
 
 
 50
 Indeed, California itself recognizes that a warrant is not necessarily required whenever governmental officials engage in the abatement of a nuisance:
 
 
 51
 We do not mean to suggest or imply that the warrant requirement extends to all entries onto private property for nuisance abatement purposes, only those which infringe upon constitutionally recognized expectations of privacy.
 
 
 52
 Gleaves v. Waters, 175 Cal.App.3d 413, 220 Cal.Rptr. 621, 625 (1985).
 
 
 53
 The view that, irrespective of the extensiveness of due process accorded people similarly situated to the Conners, a judicial authorization must be obtained prior to the enforcement of a City Council's nuisancedetermination does not appear to be sound. To begin with, under the exercise of its police power, "a local legislative body may enact and enforce police ordinances to regulate or prohibit a thing or act of such nature that it may become a nuisance or may be injurious if not regulated or abated." Rhyne, The Law of Local Government Operations Sec. 19.27, at 472 (1980); see also Sullivan v. Los Angeles Dept. of Bldg. & Safety, 116 Cal.App.2d 807, 254 P.2d 590, 592 (1953) ("the exercise of the police power is not limited to the regulation of such things as have already become nuisances or have been declared to be such by the judgment of a court").
 
 
 54
 Secondly, I tend to agree with the district judge that requiring judicial authorization of an abatement determination "would impose untoward burdens upon local governments as well as the courts." See Shadwick v. City of Tampa, 407 U.S. 345, 353, 92 S.Ct. 2119, 2124, 32 L.Ed.2d 783 (1972) ("Communities may have sound reasons for delegating the responsibility of issuing warrants to competent personnel other than judges or lawyers").
 
 
 55
 Third, in the Fourth Amendment context, the purpose of review by a "judicial officer" prior to issuance of a warrant is to "insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause." Wong Sun v. United States, 371 U.S. 471, 481-82, 83 S.Ct. 407, 413-14, 9 L.Ed.2d 441 (1963). There is nothing in the record to suggest that the city council--which is part of the legislative, not executive, branch of government--was anything but competent, impartial, neutral and detached. The hearings before the city council most assuredly constituted an adequate buffer between the municipal police officers and the Conners. For all practical purposes, the conclusion that a nuisance existed in violation of municipal law, and was therefore subject to abatement pursuant to the governmental power of the municipality, was "judicially" determined. Moreover, an application for a search warrant is ex parte. The subject is never asked for his side of the story. In this sense, the Conners enjoyed an opportunity not available to the usual "suspect." As I stated at the outset, I am concerned that the majority's opinion elevates form over substance.
 
 Qualified Immunity
 
 56
 I can agree with the majority opinion that the grant of qualified immunity as to the initial entry was erroneous. The mere absence of a provision in the municipal code requiring a warrant for inspecting suspected nuisances does not necessarily mean that the failure to obtain one was objectively reasonable, particularly in light of Tyler. See Gleaves v. Waters, 220 Cal.Rptr. at 625 ("The constitutional requirement of a warrant is not of course dependent upon the enactment by the legislature of an implementary procedure").
 
 
 57
 Even assuming, however, that the second entry and seizure violated the warrant requirement of the Fourth Amendment, I cannot find the individual qualifying defendants not entitled to qualified immunity. In the absence of specific case law on the subject, it seems wholly inappropriate to hold that a warrant requirement under the unusual circumstances of the second entry was "clearly established." Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Anderson explained this doctrine as follows:
 
 
 58
 When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." Harlow v. Fitzgerald, 457 U.S., at 814 [457 U.S. 800, 102 S.Ct. 2727, at 2736, 73 L.Ed.2d 396 (1982) ]. On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. Ibid. Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, Harlow, 457 U.S., at 819 [102 S.Ct. at 2739], assessed in light of the legal rules that were "clearly established" at the time it was taken, id., at 818 [102 S.Ct. at 2738].
 
 
 59
 The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. Harlow would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." Davis, supra at 195 [Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) ].... The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 60
 483 U.S. at 638-40, 107 S.Ct. at 3038-39 (citations omitted) (footnote omitted) (emphasis added).
 
 
 61
 The Supreme Court calls upon us in Davis v. Scherer, 468 U.S. 183, 196, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984), to recognize the demands of the real world in measuring activity by members of the executive branch:
 
 
 62
 Nor is it always fair, or sound policy, to demand official compliance with statute and regulation on pain of money damages. Such officials as police officers or prison wardens, to say nothing of higher level executives who enjoy only qualified immunity, routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to a plethora of rules, "often so voluminous, ambiguous, and contradictory, and in such flux that officials can only comply with or enforce them selectively." See P. Schuck, Suing Government 66 (1983). In these circumstances, officials should not err always on the side of caution. "[O]fficials with a broad range of duties and authority must often act swiftly and firmly at the risk that action deferred will be futile or constitute virtual abdication of office."
 
 
 63
 Today we fail to give that message due consideration. Instead, we subject officials to a trial under circumstances where four federal judges disagree as to whether what they did violated the Constitution, and we do so in an area of the law that has not been squarely addressed by this circuit. How we can say that the law they violated was "clearly established" at a particularized level escapes me.
 
 
 64
 I respectfully DISSENT.
 
 
 
 [1]
 Santa Ana Municipal Code Sec. 16-110, et seq., contains the nuisance ordinance at issue. Section 16-116 provides:
 Authority to cause abatement and removal.
 Upon discovering the existence of an abandoned, wrecked, dismantled, or inoperative vehicle, or parts thereof, on private property or public property within the city, the chief of police or his designee shall have the authority to cause the abatement and removal thereof in accordance with the procedure prescribed herein and to arrange with and authorize private persons or city employees to accomplish such removal.
 
 
 [2]
 A & P settled before trial
 
 
 [3]
 The Conners do not appeal from the dismissal of their Sec. 1985 and Sec. 1986 claims
 
 
 [4]
 As applied to the states via the fourteenth amendment
 
 
 [5]
 For a discussion of the exceptions to the fourth amendment warrant requirement (e.g., warrantless entry justified by an emergency such as a fire), see, e.g., United States v. Device, Labeled Theramatic, 641 F.2d 1289, 1294-95 (9th Cir.1981)
 
 
 [6]
 The G.M. Leasing Court upheld a warrantless seizure of the taxpayer's automobiles because they were seized "on public streets, parking lots, or other open places, and did not involve an invasion of privacy." 429 U.S. at 351, 97 S.Ct. at 628. By contrast, the Conners' automobiles were seized from their fenced, private property
 
 
 [7]
 Our holding that a warrant was required necessarily rests upon the absence of a judicial writ enforcing the City Council's nuisance determination. G.M. Leasing, 429 U.S. at 355-56 n. 20, 97 S.Ct. at 630 n. 20 (indicating that entry onto private land authorized by judicial writ is without the warrant requirement of the fourth amendment). See also Shadwick v. City of Tampa, 407 U.S. 345, 348-49, 92 S.Ct. 2119, 2121-22, 32 L.Ed.2d 783 (1972) (allowing magistrate to qualify as judicial officer, even if not a lawyer, so long as that person is neutral and detached, but noting: "The very term 'judicial officer' implies, of course, some connection with the judicial branch.")
 
 
 [8]
 In fact, the California Code sets out the procedures for obtaining a warrant for inspecting nuisances. Cal.Civ.Pro.Code Sec. 1822.50, et seq
 
 
 [9]
 Defendant California Towing's grant of qualified immunity must also be reversed as private parties acting under color of state law are not entitled to the qualified immunity defense. F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1318-19 (9th Cir.1989)
 
 
 [10]
 The City incorrectly argues that the district court improperly allowed fees for administrative proceedings. See Webb v. Dyer County Board of Education, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (district court has discretion to award such fees)
 
 
 [11]
 Further fees would of course be proper if the Conners prevail on the claim remanded for trial