EMILIO M. GARZA, Circuit Judge,
dissenting in part:
Charles Freeman and Rosalyn Brown allege that the City of Dallas (“City”) violated their Fourth and Fourteenth Amendment rights. The district court granted summary judgment to Freeman and Brown on the Fourth Amendment claim, and to the City on the Fourteenth Amendment claims. Judge Benavides and I agree with the second holding. I alone disagree with the first one. Accordingly, I dissent in part.
I
Brown acquired properties known as 2611 Meyers Street and 2621 Meyers Street located in Dallas, Texas. A vacant, dilapidated eight-unit apartment building stood on each lot. Brown intended to rent the apartment units after making repairs.
The Department of Housing and Neighborhood Services (“Department”) cited both apartment buildings for non-compliance with the City’s Minimum Urban Rehabilitation Standards Code (“Code”). When the Code violations were not corrected, it referred the matter to the Urban Rehabilitation Standards Board (“Board”), and recommended demolition.
After conducting a title search, the Board mailed a notice of hearing on each of the properties to the owner of record.[1] The notice announced that the Board might order demolition to remedy the Code offenses. It further stated that the property owner would “be given an opportunity to present evidence and witnesses if so desired.”
In preparation for the hearings, Department staffers briefed the panel of Board members assigned to decide the fate of the Meyers Street properties. They also provided panel members with information on the properties, including repair cost estimates,[2] and accompanied some of them on a tour of the premises.
Freeman appeared at the hearings, identifying himself as the “attorney-in-fact for Brown” and as an owner of 2611 and 2621 Meyers Street. He reported that he was without funds, and asked for more time to make repairs. Because of Freeman’s inability to finance repairs and doubt about his ownership, the panel ordered the destruction of each apartment building as an urban nuisance.[3]
*609 Freeman successfully petitioned the panel for a rehearing. The Board then mailed a notice of the rehearing on 2611 Meyers Street to Freeman and a notice of the rehearing on 2621 Meyers Street to Freeman and Brown. The substance of these notices was identical to that of the earlier hearing notices.
Two panel members visited the properties before the rehearings. They examined the exterior of the apartment building at 2611 Meyers Street. They ran into Freeman at 2621 Meyers Street. He showed them repairs inside of the apartment building. They told him to bring photographs of the repairs to the rehearings.[4]
At the rehearings, the Department showed pictures of the apartment buildings’ exteriors. Freeman said that he anticipated acquiring most of the materials required to make repairs at little or no cost. He further stated that he hoped to finance repairs through a loan from the City, and had received a commitment from relatives in the construction business to help him make repairs if he secured funding from the City. Freeman also submitted photographs of repairs made to the interi- or of the apartment building at 2621 Meyers Street and a list of materials that he had collected already. Finally, he asserted that he could upgrade each unit of the apartment building at 2621 Meyers Street for $2000.00. Panel members responded skeptically to Freeman’s presentation. Among their comments to Freeman were the following:
MR. KIRKPATRICK: And I strongly appreciate you [sic] intent with what you would like to do with the property [ie., 2611 Meyers Street]. The property is in serious disarray — I mean, foundation, structurally. We saw ... looked at the staff recommendations for improvement. Are you aware of the total of which they have estimated, $84,310?
MS. LOCKLEY: Are you aware of the amount of money the staff has sort of generally come up with to say how much your expenses might be for the repairs [to 2621 Meyers Street]?
Despite such statements, Freeman neither inquired about the basis for the repair cost estimates nor asked to question the Department officials responsible for them.
The panel again voted to declare the apartment buildings urban nuisances and to order their destruction because it still was unpersuaded that Freeman possessed the financial ability to make repairs in a timely manner. Freeman received a notice of demolition for each property at the end of the rehearings. The notice identified the parcel by lot and block number, as well as by street address, and stated that the panel’s decision could be appealed to state district court for review under the substantial evidence rule.
The Board also sent a notice of the order to demolish the apartment building at 2611 Meyers Street to Freeman and a notice of the order to demolish the apartment building at 2621 Meyers Street to Freeman and Brown. Each notice declared, in part:
*610 If you do not demolish the structure(s) within the time above indicated [ie., 30 days], the city will arrange to have this work done and the expense of that demolition performed under contract with the city will constitute a lien on the real property on which the structure(s) were located, and that lien will run with the land.
Freeman and Brown did not petition the state district court to review the demolition orders. When they failed to raze the apartment buildings within thirty days, the City hired a contractor to do so. It did not convene a hearing to discuss demolition costs before the contractor undertook performance. Nor did it obtain a judicial warrant. After the demolitions, a lien attached to each piece of property equal to the cost of demolition — $7954.72 for 2611 Meyers Street and $7655.55 for 2621 Meyers Street. Each lien exceeded by more than $2000.00 the demolition cost estimate that the Department had made when it had found the apartment buildings in violation of the Code.
Freeman and Brown filed a 42 U.S.C. § 1983 action against the City. They alleged that the destruction of apartment buildings constituted an unreasonable seizure in violation of the Fourth Amendment. They also maintained that the way in which the panel had decided to demolish the apartment buildings and the imposition of the hens contravened the Fourteenth Amendment’s guarantee of procedural due process.
Freeman and Brown moved for summary judgment on the Fourth Amendment claim. In response, the City requested summary judgment on all claims. The district court granted summary judgment to Freeman and Brown on the Fourth Amendment claim, denied the City’s cross-motion for summary judgment on the Fourth Amendment claim, and granted summary judgment to the City on the Fourteenth Amendment claims. After a trial on damages for the Fourth Amendment violation, a jury awarded $20,000.00 to Freeman and Brown. Timely appeals followed the entry of final judgment.
II
We review a grant of summary judgment de novo. See United States v. Johnson, 160 F.3d 1061, 1063 (5th Cir.1998). Summary judgment occurs if “there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(c). Our review encompasses only the record on which the district court based its ruling. See Topalian v. Ehrman, 954 F.2d 1125,1131-32 n. 10 (5th Cir.1992).
III
The City argues that the district court erred in granting summary judgment to Freeman and Brown on the Fourth Amendment claim. In its view, the district court wrongly held that the lack of a valid judicial warrant rendered the demolitions of the apartment buildings impermissible seizures.[5]
The Fourth Amendment declares:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const, amend. IV. In determining if a particular governmental action violates this constitutional guarantee, we initially must consider whether, or not the action was regarded as an unlawful search or seizure under the common law when the Fourth Amendment was framed. See Wy *611 oming v. Houghton, — U.S. —, 119 S.Ct. 1297, 1300, 143 L.Ed.2d 408 (1999). When this examination of the historical record yields no answer, we must decide whether or not the action was reasonable. See id.; see also Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996) (“the touchstone of the Fourth Amendment is reasonableness” (internal quotations omitted)); Carroll v. United States, 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925) (“The Fourth Amendment does not denounce all searches and seizures, but only such as are unreasonable.”). A “reasonableness determination ... reflects a ‘careful balancing of governmental and private interests.’ ” Soldal v. Cook County, III, 506 U.S. 56, 71, 113 5.Ct. 538, 549, 121 L.Ed.2d 450 (1992) (quoting New Jersey v. T.L.O., 469 U.S. 325, 341, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985)). We deem a seizure reasonable when the government has acted pursuant to a valid judicial warrant — that is, a warrant supported by probable cause that particularly describes the things to be seized. See United States v. Place, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). We also uphold a seizure made without a valid judicial warrant if it strikes the appropriate balance between the competing private and government interests. See Johnson v. United States, 333 U.S. 10, 14-15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). For example, in some circumstances we may find permissible a warrantless seizure of property that occurs after the government has provided the owner with due process. See G.M. Leasing Corp. v. United States, 429 U.S. 338, 352 n. 18, 97 S.Ct. 619, 628 n. 18, 50 L.Ed.2d 530 n. 18 (1977) (“These cases, of course, center upon the Due Process Clause rather than the Fourth Amendment, but the constitutional analysis is similar and yields a like result.”).
I agree with the City that the demolitions were reasonable seizures.[6] The intended commercial use of the apartment buildings lessened the interests of Freeman and Brown. See New York v. Burger, 482 U.S. 691, 700, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987) (“An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual’s home.”); Hroch v. City of Omaha, 4 F.3d 693, 697 (8th Cir.1993) (demolition case) (finding that the owner’s interest in commercial property “was negligible because he failed to take ‘normal precautions to maintain his privacy’ ”). In contrast, the City possessed a strong interest in demolition — the need to protect the public from hazardous buildings. See Camara v. Municipal Court of City & County of San Francisco, 387 U.S. 523, 537; 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967) (discussing when a housing inspector may inspect buildings without a warrant) (“the public interest demands that all dangerous conditions be prevented or abated”). It, moreover, effected the seizures after Freeman and Brown had received reasonable notice, a meaningful opportunity to be heard, and a chance to seek judicial review. This due process guarded the interests of Freeman and Brown just as well as a valid judicial warrant. See Samuels v. Meriwether, 94 F.3d 1163, 1168 (8th Cir.1996) (“[Our] ... holdings, suggest that an abatement [of a nuisance] carried out in accordance with procedural due process is reasonable [as to the Fourth Amendment] in the absence of any factors that outweigh governmental interests.”); Conner v. City of Santa Ana, 897 F.2d 1487, 1495 (9th Cir.1990) (Trott, J., dissenting) (“A warrant — and the process used to attain it — would have added nothing to the [property owners’] ... privacy in light of the equivalent substitute process they did receive, or to the independent [judicial] review to which they were entitled.”). The City therefore did not violate the Fourth Amendment in this *612 ease.[7] The majority errs in holding otherwise.
IV
Unlike the majority, I conclude that the district court improperly granted summary judgment to Freeman and Brown on the Fourth Amendment claim.
Accordingly, I dissent in part.

.The Board did not give Freeman notice because he had no interest in either property at the time. It sent Brown a notice on 2621 Meyers Street, the property of which she was the owner of record. (Brown became the owner of record for 2611 Meyers Street after the Board decided how to address the Code violations.)

. The Department determined that the estimated cost of repairs totaled $84,290.00 for 2611 Meyers Street and $108,680.00 for 2621 Meyers Street.

. The Code defined an “urban nuisance” as the following:
*609 [A] premises or structure that:
(A) is reasonably dangerous to the physical health or safety of an occupant or other person; or
(B) because of violations of [the Code] its state of disrepair is such that it could reasonably cause injury, damage, harm, or inconvenience to a considerable portion of the community in the use and enjoyment of property, materially interfering with the proper use or comfort and enjoyment of surrounding property, taking into consideration the nature and use of the properties in the area and the character of the community in which they are situated, which condition would be substantially offensive and annoying to persons of ordinary sensibilities, tastes, and habits living in the community.
Dallas, Tex., Code ch. 27, art. I, § 27-3(23) (1993).

. Before the rehearings, the panel met with Department staffers to discuss Freeman's request to waive the rehearing fees.

. The City does not contest that the demolitions were seizures. See Soldal v. Cook County, Ill., 506 U.S. 56, 72, 113 S.Ct. 538, 549, 121 L.Ed.2d 450 (1992) (tearing mobile home from its foundation and towing it to another lot is a seizure).

. Neither side makes arguments regarding the lawfulness of the type of seizures at issue here under the common law when the Fourth Amendment was framed. Instead, everyone focuses on the reasonableness of the seizure.

. The majority apparently patterns its analysis of the Fourth Amendment claim on Conner v. City of Santa Ana, 897 F.2d 1487 (9th Cir.1990). In Conner, municipal authorities claimed that a warrantless confiscation of two abandoned automobiles located on private property was permissible because the entry and seizure were preceded by numerous hearings and appeals. See id. at 1489, 1490-91. The Ninth Circuit rejected the argument, holding that the Fourth Amendment obliged the officials to secure a valid judicial warrant because of the absence of "any case ... [that] has created a 'process’ exception to the warrant requirement.” I'd. at 1491.
I disagree with Conner. When a warrant-less search or seizure fails to fit within any of the exceptions to the warrant requirement, we do not, as the Ninth Circuit did in Conner and as the majority does in this case, reflexively invalidate it. Rather, we balance the governmental and private interests to determine the legality of the warrantless search or seizure. See Whren v. United States, 517 U.S. 806, 817, 116 S.Ct. 1769, 1776, 135 L.Ed.2d 89 (1996) ("It is of course true that in principle every Fourth Amendment case, since it turns upon a 'reasonableness determination,’ involves a balancing of all relevant factors.”); California v. Acevedo, 500 U.S. 565, 581-84, 111 S.Ct. 1982, 1992-94, 114 L.Ed.2d 619 (1991) (Scalia, J., concurring in the judgment) (recognizing that reasonableness, not the existence of a valid judicial warrant, is the Fourth Amendment’s chief concern); Johnson v. United States, 333 U.S. 10, 14-15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) ("When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by the judicial officer, not by a police-man or Government enforcement agent. There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with.”).