**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1235

DIANE L. NIXON; WILLIAM CLYDE LASSELL,

                                    Plaintiffs - Appellants,

        versus

MONTGOMERY COUNTY, MARYLAND; LINDA BIRD, a
Montgomery County resident, Supervisor, Code
Enforcement Section; KEVIN M. MARTELL,

                                    Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Peter J. Messitte, District Judge.
(8:04-cv-03556-PJM)

Argued: September 25, 2007         Decided: October 12, 2007

Before MICHAEL and MOTZ, Circuit Judges, and Joseph F.
ANDERSON, Jr., United States District Judge for the District of
South Carolina, sitting by designation.

Affirmed in part and reversed in part by unpublished per curiam
opinion.

**ARGUED:** David W. Brown, KNOPF & BROWN, Rockville, Maryland, for
Appellants.  Sharon Veronica Burrell, Associate County Attorney,
COUNTY ATTORNEY'S OFFICE FOR THE COUNTY OF MONTGOMERY, Rockville,
Maryland, for Appellees.  **ON BRIEF:** Charles W. Thompson, Jr.,
County Attorney, Marc P. Hansen, Deputy County Attorney, Patricia
P. Via, Principal Counsel for Litigation, COUNTY ATTORNEY'S OFFICE
FOR THE COUNTY OF MONTGOMERY, Rockville, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Diane Nixon and her husband, William Clyde Lassell, (collectively "Nixon") contend that Montgomery County Housing officials violated constitutional rights and committed intentional torts when they entered Nixon's property, ostensibly to remove weeds and other debris as authorized by the County Housing Code. The district court granted summary judgment to all defendants, concluding that the possible negligence of County officials did not rise to the level of either a constitutional violation or an intentional deprivation of property. We affirm in part and reverse in part.

I.

On October 25, 2001, the Montgomery County Department of Housing and Community Affairs received a complaint concerning the property of Diane Nixon at 708 Ludlow Street, Silver Spring, Maryland. Kevin Martell, a housing code inspector, visited Nixon's property and determined that it was in violation of the County Code.

Martell sent a notice to Nixon dated October 25, 2001, by certified mail, return receipt requested, stating that her property was in violation of Chapter 58 of the Housing Code, which prohibits "weeds and generalized growth to exceed 12 inches in height limit in a subdivision." The notice complied with Chapter 58 in all

2

respects: it offered Nixon a 10-day waiting period, the opportunity to appeal the notice, and the telephone numbers for the Board of Appeals and for Martell. But the notice warned that on or after November 5, 2001, the County would enter the property for the purpose of bringing it into compliance with the Housing Code, with Nixon responsible for the attending costs. The record includes the return receipt, bearing the signature of Lassell (Nixon's husband), stamped October 26, 2001.

After receiving the letter, Nixon failed to appeal. Instead, she maintains that she began cleaning her property, hiring local youths to assist her. Nonetheless, early on November 7, 2001, Martell and a work crew arrived at Nixon's property, entered it through a chain link gate that they removed from its hinges, and proceeded to clean up the property.

Martell claims that the property was still in violation of the Housing Code when he arrived on November 7, and that, in cleaning the property, he cut back and removed dead vegetation, vines, overgrown bamboo, logs of wood, and dead, dying, or leaning trees. He acknowledges that he also removed a picnic table and wheelbarrow, but maintains that these items were unusable and constituted trash. In contrast, Nixon claims that the yard had been sufficiently cleared of overgrowth by November 7 to be within the Housing Code, and that Martell actually destroyed healthy

3

trees, ornamental shrubs, and plants with an estimated value of $17,362.

On November 5, 2004, Nixon filed this action against Martell, his supervisor, Linda Bird, and the County, alleging violations of Nixon's constitutional rights to due process and freedom from unreasonable search and seizures under both the federal and state constitutions.* Nixon also alleged state tort claims for trespass and conversion. The district court granted summary judgment to all defendants on all claims.

## II.

The Due Process Clause guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of the law." The Supreme Court has repeatedly affirmed "the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." <u>United States v. James Daniel Good Real Property</u>, 510 U.S. 43, 48 (1993). Nixon raises two due process challenges.

She initially claims that the County's notice failed to identify the legal basis for all of the items that were removed. Nixon notes that Chapter 58 of the Housing Code addresses only weeds and generalized plant growth over 12 inches in height. A

---

*The parties agree that the state claims alleging violations of the Maryland Constitution effectively rise or fall with the federal claims. Therefore, we will not address them separately.

4

separate section of the Housing Code, Chapter 48, addresses solid waste matter, like the picnic table, wheelbarrow, and dead trees. For this reason, Nixon claims the notice was deficient.

In <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976), the Supreme Court held that a court should determine the adequacy of predeprivation process by balancing three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Applying these factors, we can only conclude that the County provided constitutionally adequate process to Nixon concerning the removal of the items covered by Chapter 58 <u>and</u> those covered by Chapter 48. The removal of solid waste items, covered by Chapter 48, appears closely related to the clean-up of the Chapter 58 items. Although lacking specificity, the notice clearly presented the County's general concerns, indicated the County's proposed solution, and provided Nixon with a means to appeal if she so chose.

Nixon, however, also claims that the County exceeded its legitimate authority under <u>any</u> section of the Housing Code by destroying healthy trees and a functional picnic table and wheelbarrow. Although little record evidence beyond the testimony

of Nixon and her husband supports such a claim, we must construe the facts in the light most favorable to Nixon. Yet, even taking these facts as a given, Nixon does not present a viable due process claim because Maryland provides postdeprivation process that offers Nixon sufficient redress for her alleged property loss.

When a deprivation of property occurs through the "random and unauthorized acts" of a government employee, then the Constitution requires only adequate postdeprivation process. See Zinermon v. Burch, 494 U.S. 113, 128 (1990). In the present case, even assuming that Martell and his work crew destroyed healthy trees and a functional wheelbarrow and picnic table, the alleged destruction did not occur as the result of established state procedures, but rather through the "random and unauthorized acts" of government employees.

Maryland presents Nixon with an entirely adequate postdeprivation remedy for any unauthorized acts by local government employees, like Martell and his work crew. The Local Government Tort Claims Act provides that "local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Code. Ann., Cts. & Jud. Proc., § 5-303(b)(1). When liability attaches under the Act, the local government forgoes governmental or sovereign immunity in exchange for a $200,000 cap on each

6

individual claim and a $500,000 cap on the total claim, as well as freedom from punitive damages. § 5-303(a)-(c). If a local government employee has acted with actual malice when committing such tortious acts, then the judgment may be executed against the employee and the local government may seek indemnification for any sums it is required to pay. § 5-302(b)(2).

For these reasons, Nixon's due process claims fail.

III.

The Fourth Amendment, made applicable to the states by the Fourteenth, provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Moreover, the Fourth Amendment's protections apply in the civil as well as the criminal context, and seizures of property are subject to Fourth Amendment scrutiny regardless of whether a "search" has taken place. Soldal v. Cook County, 506 U.S. 56, 67 (1992).

In Camara v. Municipal Court, 387 U.S. 523 (1967), the Supreme Court held that administrative searches by health and housing officials constituted significant intrusions on Fourth Amendment

7

interests, and that such searches, when authorized and conducted without a warrant procedure, lacked the traditional safeguards guaranteed by the Fourth Amendment. Yet, as the Court has repeatedly reaffirmed, often through explicit reference to <u>Camara</u>, "reasonableness," rather than a warrant, "is still the ultimate standard under the Fourth Amendment," and its determination will reflect a "careful balancing of governmental and private interests." <u>Soldal</u>, 506 U.S. at 549 (internal quotation marks omitted). Consequently, as a number of our sister circuits have held, procedural due process guarantees can, in certain circumstances, satisfy the Fourth Amendment reasonableness requirement. <u>See</u> <u>Santana v. City of Tulsa</u>, 359 F.3d 1241, 1245 (10th Cir. 2004); <u>Freeman v. Dallas</u>, 242 F.3d 642, 647 (5th Cir. 2001); <u>Samuels v. Meriwether</u>, 94 F.3d 1163, 1168 (8th Cir. 1996). <u>But see</u> <u>Conner v. City of Santa Ana</u>, 897 F.2d 1487, 1490-92 (9th Cir. 1990).

In the case at hand, the County afforded Nixon numerous procedural guarantees before it entered her property, including prior written notice, a 10-day waiting period, and the opportunity to appeal to a board of appeals. Nixon has not provided any reasons why an <u>ex</u> <u>parte</u> warrant requirement would be more satisfactory than the existing safeguards, and she has not alleged that the particular procedures afforded to her failed to assure the reasonableness of the County's actions.

8

Furthermore, even if Nixon could demonstrate an unreasonable seizure occurred under the Fourth Amendment, Martell and Bird would enjoy qualified immunity so long as they could have reasonably believed that their behavior did not violate a constitutional right. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Even viewing the facts in the light most favorable to Nixon, there is no evidence that any County official "knowingly violate[d]" Nixon's rights. On the contrary, the record indicates that all County employees reasonably believed themselves to be acting in accordance with the law during the "clean and lien."

For these reasons, Nixon's Fourth Amendment claims likewise fail.


IV.

Finally, we address Nixon's state law conversion and trespass claims. For both trespass and conversion, there is an implicit defense if the acts are committed pursuant to a lawful purpose. See Heinze v. Murphy, 24 A.2d 917, 922 (Md. 1942) (holding that an officer entering an individual's property in the line of duty was not liable for trespass); Darcars Motors v. Borzym, 841 A.2d 828, 836 (Md. 2004) (recognizing that conversion is "not the acquisition of the property by the wrongdoer, but the wrongful deprivation of

9

a person of property to the possession of which he is entitled"). Moreover, conversion is an intentional tort requiring both a physical assertion of ownership over another's property and the mental intention to deprive that person of his or her lawful property. Borzym, 841 A.2d at 836. Here, Nixon has offered no evidence that any County official intentionally deprived her of any property that she lawfully possessed. Thus, her conversion claim fails.

The district court also rejected Nixon's trespass claim. Crucially, in contrast to conversion, trespass can involve either "an intentional or negligent intrusion upon or to the possessory interest in property of another." Ford v. Baltimore City Sheriff's Office, 814 A.2d 127, 129 (Md. App. 2002) (emphasis added). On appeal, Nixon pursues only the trespass claim against Martell. Construing the facts in her favor, as we must, the complaint does state a trespass claim against Martell. Accordingly, we must reverse the grant of summary judgment to Martell on this claim. Of course, on remand the district court may exercise its discretion to dismiss the state law claim against Martell, without prejudice, now that no federal law claims remain. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART AND REVERSED IN PART.