**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**An Article of Device Consisting of One DEVICE, More or Less, LABELED in Part: (front) "THERAMATIC", Defendant**

**and**

**Dr. Ralph B. Cloward,**
**Claimant-Appellant.**

No. 78–2998.

United States Court of Appeals,
Ninth Circuit.

March 30, 1981.

James M. Sattler, Honolulu, Hawaii, for claimant-appellant.

Barry Grossman, Daniel J. Conway, Washington, D. C., for plaintiff-appellee.

Before SKOPIL, FLETCHER and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

On January 16, 1973, the United States Attorney for the District of Hawaii obtained a warrant of arrest *in rem*, directing the United States Marshal to seize a diathermy machine and accompanying leaflets belonging to appellant, Dr. Ralph B. Cloward, a Honolulu neurosurgeon. The propriety of the procedure used to obtain that warrant is the subject of this appeal. We agree with appellant's contention that, in the circumstances of this case, the challenged procedure violated the Fourth Amendment.

The authority for the seizure of appellant's diathermy machine stemmed from the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–92. At the time the warrant directing the seizure was obtained, section 304(a)(1) of that act, 21 U.S.C. § 334(a)(1), provided for seizure of any "adulterated or misbranded" medical device shipped in interstate commerce.[1] Section 304(b) stipulates that, except for the availability of jury trials, the procedure for seizures under the act "shall conform, as nearly as may be, to the procedure in admiralty," 21 U.S.C. § 334(b). Accordingly, the procedure used to seize appellant's machine was that laid down by Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.[2]

---

1. The Medical Device Amendments of 1976, Pub.L. 94–295 § 3(c), 90 Stat. 539 (1976), amended section 304 of the Food, Drug, and Cosmetic Act to permit the seizure of adulterated or misbranded medical devices found in any state, regardless of whether they moved in interstate commerce. 21 U.S.C. § 334(a)(2) (1980 Supp.).

2. Rule C provides, in relevant part:

    (1) When available. An action in rem may be brought:

    . . . .

    (b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.

    . . . .

    (2) Complaint. In actions in rem the complaint shall be verified on oath or solemn affirmation. It shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action. In actions for the enforcement of forfeitures for violation of any statute of the United States the complaint shall state the place of seizure and whether it was on land or on navigable waters, and shall contain such allegations as may be required by the statute pursuant to which the action is brought.

    (3) Process. Upon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action and deliver it to the marshal for service. . . . Fed.R.Civ.P.Supp. Rule C.

As Rule C(3) requires, the warrant for seizure was issued by the clerk of the United States District Court for the District of Hawaii upon the filing of a verified complaint for forfeiture. That complaint alleged that appellant's diathermy machine was "misbranded" within the meaning of 21 U.S.C. § 334(a) because it was medically ineffective and thus useless in treating the conditions that the leaflets claimed the machine could alleviate.[3] The clerk issued the warrant on the day the complaint was filed, and within two days the United States Marshal seized the diathermy machine in appellant's medical office in Honolulu.

This procedure did not afford appellant any notice of the legal proceedings against his device before the actual seizure. Moreover, there was no judicial hearing before the seizure, nor was the Government's complaint examined by a judicial officer with discretion to refuse to issue the warrant. Citing these factors, appellant moved on February 16, 1973 to set aside the warrant of arrest and to compel the return of his machine, arguing that his Fifth Amendment due process rights had been violated.[4]

After lengthy intervening proceedings not relevant to this appeal—including an abortive attempt to negotiate a settlement—the district court denied appellant's motion on March 29, 1977. The district court entered summary judgment for the Government on June 9, 1978, condemning appellant's device and ordering its destruction once all appeals had been exhausted.

Appellant appeals from this judgment and from the order of March 29, 1977 denying his motion to set aside the arrest warrant and compel the return of the diathermy machine.

We agree with appellant's contention that, in the particular factual setting involved here, the procedure used in seizing his diathermy machine and the accompanying leaflets violated the Fourth Amendment.[5]

The Fourth Amendment prohibits "unreasonable searches and seizures." The instant case involves not only a seizure (of appellant's diathermy machine) but a paradigmatic search—a physical intrusion by the U.S. Marshal into Dr. Cloward's office. Deciding whether a law-enforcement practice meets the Fourth Amendment's command of reasonableness requires "balancing [the] intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests." *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *accord, Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). "In construing this command [of reasonableness], there has been general agreement that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.'" *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973), *quoting Camara v. Mu-*

---

**3.** A diathermy machine produces localized heating of subcutaneous body tissue by means of high-frequency electrical oscillations. The government's objections to the particular model owned by Dr. Cloward (as explained in the memorandum supporting the government's motion below for summary judgment) was that it failed to heat the tissue enough to be medically useful, and that diathermy is not an effective therapy for the conditions mentioned in the leaflets accompanying the device.

**4.** Appellant also argued that the affidavit verifying the government's complaint was legally insufficient.

**5.** In view of this disposition, we do not reach appellant's due process argument, nor the

claim that the verification of the complaint was defective.

Appellant did not raise his Fourth Amendment claim in the trial court, either in his initial motion to set aside the arrest warrant or in his later, supplemental motion, and the trial court never ruled on that claim. Ordinarily, this court would not consider an issue raised for the first time on appeal. *United States v. Black,* 609 F.2d 1330, 1333 (9th Cir. 1979). In this instance, however, the exception stated in *Black* applies—"the issue conceded or neglected in the trial court is purely one of law and the pertinent record has been fully developed ... [and] the issues have been fully briefed." *Id.* Moreover, the government has raised no objection to consideration of the Fourth Amendment issue.

*nicipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930 (1967).

The rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few ·specifically established and well-delineated exceptions," *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), has *from* time to time been questioned by individual justices.[6] But where the search at issue takes place in a person's home or office—as happened here—the warrant requirement has been undisputed:

> Both sides to the controversy appear to recognize a distinction between searches and seizures that take place on a man's property—his home or office—and those carried out elsewhere. It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless . . . it falls within one of a carefully defined set of exceptions based on the presence of "exigent circumstances."

*Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971) (footnote omitted).[7]

Equating an office with a home as a place where a warrantless search is prima facie unreasonable is no isolated instance. *See, e. g., Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978) (rule that "warrantless searches are generally unreasonable . . . applies to commercial premises as well as homes"). Indeed, in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977),

although the government advocated a very restricted view of the need for a search warrant, it nonetheless conceded that "offices" no less than "homes" do "implicate interests which lie at the core of the Fourth Amendment." *Id.* at 7, 97 S.Ct. at 2481.

In *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Supreme Court reaffirmed the position that entry into private property— specifically, a business office—requires a warrant. There, government agents, without a warrant, seized various items of property subject to levy under an income tax assessment. Some of the items seized were automobiles found on public streets and lots; other items were books and records taken from the corporation's business offices. The Court upheld the seizure of the automobiles but struck down the seizure of the records, saying:

> It is one thing to seize without a warrant property resting in an open area or seizable without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer.

*Id.* at 354, 97 S.Ct. at 629–30.

█ Thus, since the search involved in the instant case took place in Dr. Cloward's medical office, it falls under "the general constitutional requirement that for a search to be reasonable a warrant must be obtained." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 324, 98 S.Ct. 1816, 1827, 56 L.Ed.2d 305 (1978).[8] It is true that a warrant of sorts was obtained in this case—a warrant of arrest *in rem.* But the procedure used to

---

**· 6.** *See Payton v. New York,* 445 U.S. 573, 621, 100 S.Ct. 1371, 1397–98, 63 L.Ed.2d 639 (1980) (Rehnquist, J., dissenting); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 325–28, 98 S.Ct. 1816, 1827–28, 56 L.Ed.2d 305 (1978) (Stevens, J., dissenting); *Coolidge v. New Hampshire,* 403 U.S. 443, 492, 91 S.Ct. 2022, 2051, 29 L.Ed.2d 564 (1971) (Harlan, J., concurring); *Vale v. Louisiana,* 399 U.S. 30, 36, 90 S.Ct. 1969, 1973, 26 L.Ed.2d 409 (1970) (Black, J., dissenting).

**7.** This language was quoted approvingly last Term in *Payton v. New York,* 445 U.S. 573, 586

n.25, 100 S.Ct. 1371, 1380 n.25, 63 L.Ed.2d 639 (1980).

**8.** That requirement is not abrogated merely because the search and seizure here occurred in a non-criminal context. "[T]he Fourth Amendment . . . protects against warrantless intrusions during civil as well as criminal investigations." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978).

obtain that warrant failed to satisfy constitutional requirements.

The Fourth Amendment explicitly commands that "no Warrants shall issue, but upon probable cause." Case law has established the further requirement that the warrant must be issued by a "neutral and detached magistrate," who must actually determine whether probable cause for a search exists. *Delaware v. Prouse*, 440 U.S. 648, 654 n. 11, 99 S.Ct. 1391, 1396 n. 11, 59 L.Ed.2d 660 (1979); *United States v. United States District Court*, 407 U.S. 297, 316, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972). These requirements are not mere formalities. "[T]he very purpose of the warrant requirement . . . is to place a neutral magistrate between the public and police conduct." *United States v. Allard*, 634 F.2d 1182, 1187 (9th Cir. 1980); *see also United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977); *United States v. United States District Court*, 407 U.S. 297, 316, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972). That is why the Supreme Court has insisted that the official who issues a warrant "must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783 (1972). The clerk who issued the warrant used in seizing appellant's diathermy machine did not meet this condition, for two reasons.

In the first place, the purely conclusory nature of the government's complaint for forfeiture meant that the clerk was not given any of the facts needed to decide whether there was probable cause to believe that appellant's diathermy machine violated the law. That complaint essentially made three allegations: (i) that statements in the leaflets accompanying the diathermy machine, representing it as effective in treating various specified ailments, "are false and misleading, since the article is not adequate and effective for such purposes"; (ii)

that the machine "fails to bear adequate directions for use for . . . the treatment of the above named conditions and diseases, since adequate directions cannot be written for use by laymen of the article for such purposes"; and (iii) that the machine "is dangerous to health . . . since it is ineffective for treatment of the serious conditions represented and suggested in its labeling." Absolutely no supporting evidence is given for any of these allegations. In effect, the complaint says merely: "This machine doesn't work." The official who received the complaint was thus given no basis whatsoever on which to decide independently whether probable cause for seizure existed.[9]

Second, that official—the court clerk—was not empowered to make such an independent decision. Supplemental Rule C stipulates that the clerk of the district court is to receive and examine the complaint for forfeiture, and Rule C(3) appears to make the clerk's role purely ministerial: "Upon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the . . . property that is the subject of the action . . . ." The clerk apparently has no discretion to refuse to issue a warrant once the complaint has been filed. At most, the clerk may have the power to refuse a warrant where the complaint fails to meet the formal requirements of Rule C(2). 7A *Moore's Federal Practice* ¶ C.12, at 682. But this still leaves the clerk without discretion to examine the substantive adequacy of the complaint.

The warrant employed in the instant case was therefore obtained in a constitutionally defective manner. The intrusion into Dr. Cloward's office, and the seizure of his diathermy machine, must therefore be held unlawful, unless one of the "specifically established and well-delineated exceptions" to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

**9.** Indeed, the complaint says nothing about *why* the appellant's machine is medically ineffective. The allegation that it failed to heat body tissue sufficiently for therapeutic pur-

poses appears only in the government's motion for summary judgment and the supporting affidavits.

■ A warrant is unnecessary when the search is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Appellant, however, never consented to the instant search. The exception permitting warrantless search of the person and immediate surroundings of someone arrested, *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973), is inapplicable here because appellant was not arrested. Even more patently irrelevant are the exceptions for border searches, *United States v. Ramsey*, 431 U.S. 606, 616–19, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977), and for searches made during "hot pursuit" of a dangerous suspect, *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967). We are not dealing here with a search of an automobile, where warrantless searches may be permitted because the vehicle could be driven away while a warrant was being obtained. *Chambers v. Maroney*, 399 U.S. 42, 50–51, 90 S.Ct. 1975, 1980–81, 26 L.Ed.2d 419 (1970).[10]

Finally, it is hard to find any "exigent circumstances" in the present case that would excuse the failure to obtain a valid warrant. Such circumstances exist where, for example, there is a high risk that evidence will be destroyed if law enforcement officers must wait to obtain a warrant. *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966). Nothing in the record suggests that Dr. Cloward was likely to conceal his machine or to send it out of the jurisdiction. (The government could hardly worry that he might *destroy* the machine, since that was precisely what the government itself wanted.) The government's own complaint, which asserted that appellant's diathermy machine "was shipped . . . on or about September 1, 1966," suggests that the device had been in appellant's possession for more than six years, making it hard to understand why there should suddenly be concern that it would disappear unless seized at once. There is also nothing in the record to suggest a threat of imminent harm to anyone that would require swift action. We are not, for example, dealing with a case where it is necessary to seize dangerous drugs or contaminated food. Indeed, there is no allegation that appellant's machine had ever actually harmed anyone—the government's complaint alleged simply that the machine was not effective.

Thus, none of the traditional exceptions to the warrant requirement are applicable here. We are of course aware that recent Supreme Court decisions have permitted warrants for administrative searches to be issued on a basis weaker than the probable cause showing traditionally required for a criminal search warrant. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978). The traditional notion of probable cause, requiring reason to believe that the particular target of the search is in violation of the law, would have prevented random inspections needed to enforce general statutory standards such as those governing housing conditions, *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), or workplace safety, *Marshall v. Barlow's, Inc., supra*. Here, however, the government had a specific target in mind. It was not conducting random searches of physicians' offices to ensure general compliance with the Food, Drug, and Cosmetic Act, but rather searching a particular physician's office to seize a particular, identified device. No obstacle to that search is created by insisting that the government satisfy the traditional standard of probable cause to obtain a warrant.

---

**10.** Neither are we dealing with the kind of situation with which the admiralty rules were designed to deal—the seizure of a ship, whose mobility, like that of the automobile, may necessitate expedited action without time to obtain a warrant. We therefore are not required to question "the prevailing law in admiralty cases . . . that a warrant to initiate an action *in rem* by attachment need not be accompanied by probable cause." *United States v. Pappas*, 613 F.2d 324, 328 (1st Cir. 1979) (questioning application of "prevailing law" in non-admiralty contexts).

There is even less reason to hold that the warrantless search of Dr. Cloward's office should be permitted on the authority of those Supreme Court opinions allowing warrantless searches of businesses subject to pervasive and traditional regulation. *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (firearms dealer); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor dealer). The Court has emphasized that those cases "represent responses to relatively unique circumstances." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1821, 56 L.Ed.2d 305 (1978). *Biswell* and *Colonnade* involved statutes specifically authorizing searches of firearms and liquor dealers, whereas the search at issue here was not part of any statutory program to inspect physicians' offices—the same seizure procedure could have been used against misbranded devices no matter where they were found. We decline to extend the narrow *Biswell-Colonnade* exception to such a situation.

We hold that absent exigent circumstances, entrance into homes and offices to seize items alleged to violate the Food, Drug, and Cosmetic Act must comply with the basic requirements of the Fourth Amendment: the verified complaint on which the warrant authorizing seizure is based must provide probable cause to believe that the article to be seized violates the act, and the complaint must be scrutinized by a detached, independent official, empowered to decide whether probable cause does exist, before the warrant is issued.[11] This requirement should not unduly impede the government's routine enforcement efforts.

The judgment of the district court is reversed, and the case is remanded for further proceedings.

---

11. Two other circuits have reached the contrary conclusion that civil seizures of this type are not subject to the probable cause standard. In *Founding Church of Scientology v. United States*, 409 F.2d 1146, 1150 (D.C.Cir.), *cert. denied*, 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969), the District of Columbia Circuit concluded that in seizure proceedings under the Food, Drug, and Cosmetic Act a showing of probable cause before a magistrate is not required. The Fourth Circuit, quoting from the *Scientology* opinion, subsequently found a showing of probable cause unnecessary in a seizure under the Federal Hazardous Substances Act (overruling the district court's opinion on this point). *United States v. Articles of Hazardous Substance*, 588 F.2d 39, 43 (4th Cir. 1978). We do not find the reasoning of these opinions convincing.

The Fourth Circuit opinion said that compliance with Rule C is ipso facto a sufficient substitute for a showing of probable cause. No reason was given for this conclusion. The District of Columbia Circuit found that the Fourth Amendment's "substantive prohibition against unreasonable seizures" was satisfied because the Government's libel of information "particularly described the items to be seized, and gave a reasonably particular account of the respects in which they were thought to contravene the [Food, Drug, and Cosmetic] Act." 409 F.2d at 1150 (footnote omitted). We believe, however, that the complaint which the government used to obtain the warrant employed in seizing Dr. Cloward's diathermy machine did *not* provide any "reasonably particular account" of the claimed violations of the statute; a reader of that complaint can have no idea what evidence the government had for claiming that the device was not medically effective. Moreover, the District of Columbia Circuit gave no convincing reason for dispensing with the requirement that a neutral judicial official, rather than the agents seeking the seizure, should be the one to decide whether probable cause for seizing the targeted device exists.