93 F.3d 572
 65 USLW 2150, 96 Cal. Daily Op. Serv. 6117,
96 Daily Journal D.A.R. 10,005
 UNITED STATES of America, Plaintiff-Appellant,
v.
ARGENT CHEMICAL LABORATORIES, INC., various articles of drug
identified in Attachment A, which are located at Argent
Chemical Laboratories, Inc., 8515 and 8702 152nd Avenue NE,
Redmond, Washington, Defendant-Appellee.
 No. 95-35167.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1996.
Decided Aug. 16, 1996.
 
 Jacob M. Lewis, United States Department of Justice, Washington, D.C., for plaintiff-appellant.
 Jon R. Zulauf, Finegold & Zulauf, Seattle, Washington, for defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington, John C. Coughenour, District Judge, Presiding. D.C. No. CV-94-01120-JCC.
 Before: BROWNING, WRIGHT and CANBY, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Under procedures authorized by Congress, the Food and Drug Administration ("FDA") seized allegedly adulterated products from the premises of a regulated veterinary drug manufacturer, without obtaining a warrant from a judicial officer issued upon a finding of probable cause. The question before us is whether that seizure violated the Fourth Amendment. We conclude that it did not, and we reverse the judgment of the district court.
 
 I. The Factual Background
 
 2
 Argent Chemical Laboratories manufactures and repackages veterinary drugs. FDA agents inspected Argent several times between the summer of 1993 and May 1994 to ensure compliance with the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. ("Act"). The FDA cited Argent for certain deficiencies. Several months after the last inspection, the FDA agents secured from the Deputy Clerk of the District Court, without the intervention of a judicial officer or a showing of probable cause, an in rem arrest warrant for various veterinary drugs alleged to violate the Act. FDA agents and United States Marshals then seized over $100,000 worth of veterinary drugs from Argent's premises.
 
 
 3
 This condemnation action followed. Argent appeared as claimant and contested the constitutionality of the seizure. The district court held that the seizure violated the Fourth Amendment; it accordingly granted Argent's motion to quash the in rem arrest warrant and ordered the government to return the property. The government appealed, and the district court stayed its order pending the appeal.
 
 II. The Statutory Scheme of Seizure
 
 4
 The warrant in this case was issued in accordance with the Act. Under the Act, an article "proceeded against shall be liable to seizure by process pursuant to the libel, and the procedures in cases under this section shall conform, as nearly as may be, to the procedure in admiralty...." 21 U.S.C. § 334(b). Under the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"), an in rem action begins with a complaint that must "be verified on oath or solemn affirmation" and that must "describe with reasonable particularity the property that is the subject of the action." Supplemental Rule C(2). Upon filing of the complaint, the clerk issues a warrant:
 
 
 5
 Except in actions by the United States for forfeitures for federal statutory violations, the verified complaint and any supporting papers shall be reviewed by the court and, if the conditions for an action in rem appear to exist, an order so stating and authorizing a warrant for the arrest of the vessel or other property that is the subject of the action shall issue and be delivered to the clerk who shall prepare the warrant.
 
 
 6
 . . . . .
 
 
 7
 In actions by the United States for forfeitures for federal statutory violations, the clerk, upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the vessel or other property....
 
 
 8
 Supplemental Rule C(3) (emphasis added). Thus, because this was an action by the United States for a forfeiture for federal statutory violations, FDA agents were able to obtain a warrant without review by a judicial officer or a finding of probable cause.
 
 
 9
 III. The Fourth Amendment and the Colonnade-Biswell Exception
 
 
 10
 Argent argues that, although the drugs were seized pursuant to a warrant issued in accordance with the Act, the seizure violated the Fourth Amendment's prohibition of unreasonable searches and seizures and its requirement that warrants issue upon probable cause. We conclude, however, that Argent's argument is defeated by the nature of its business and the regulation to which it is subject.
 
 
 11
 The Fourth Amendment applies to commercial premises as well as to private homes, See v. City of Seattle, 387 U.S. 541, 546, 87 S.Ct. 1737, 1741, 18 L.Ed.2d 943 (1967), but under the so-called Colonnade-Biswell exception, warrantless searches and seizures on commercial property used in "closely regulated" industries are constitutionally permissible. Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). Persons engaging in pervasively regulated industries have a diminished expectation of privacy. New York v. Burger, 482 U.S. 691, 702, 107 S.Ct. 2636, 2643-44, 96 L.Ed.2d 601 (1987); Biswell, 406 U.S. at 316, 92 S.Ct. at 1596. With regard to such industries, "Congress has broad authority to fashion standards of reasonableness for searches and seizures." Colonnade, 397 U.S. at 77, 90 S.Ct. at 777. Thus in Colonnade and Biswell, the Court held that there was no constitutional violation when the businesses of dispensing liquor and selling firearms, respectively, were subjected to inspections and seizures without a warrant issued by a judicial officer upon probable cause.
 
 
 12
 Argent asserts that it is not subject to the Colonnade-Biswell exception for two reasons: first, its veterinary drug business is not the kind of industry that is subject to the Colonnade-Biswell exception; and second, the Colonnade-Biswell exception does not extend to a separate and particularized seizure of misbranded or adulterated goods. We reject both contentions.
 
 
 13
 IV. Manufacture of Veterinary Drugs as a Closely Regulated Industry
 
 
 14
 In New York v. Burger, 482 U.S. at 702-03, 107 S.Ct. at 2643-44, the Supreme Court set forth the standards for determining when the Colonnade-Biswell exception applies.[1] A warrantless inspection will be deemed reasonable only if the business is closely regulated and if three criteria are met:
 
 
 15
 First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made....
 
 
 16
 Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." ...
 
 
 17
 Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant."
 
 
 18
 Burger, 482 U.S. at 702-03, 107 S.Ct. at 2644 (quoting Donovan v. Dewey, 452 U.S. 594, 600, 602-03, 101 S.Ct. 2534, 2540, 69 L.Ed.2d 262 (1981)). We conclude that all of these standards are met in this case.
 
 
 19
 As a threshold matter, the veterinary drug industry is "closely regulated." See generally 21 U.S.C. §§ 301-392; 21 C.F.R. Pts. 200-599. The Food, Drug, and Cosmetic Act prohibits the adulteration or misbranding of any drug, 21 U.S.C. § 331(b), whether that drug is intended for use by either humans or animals, 21 U.S.C. § 321(g)(1)(B). "[V]irtually every phase of the drug industry is heavily regulated, from packaging, labeling, and certification of expiration dates, to prior FDA approval before new drugs can be marketed." United States v. Jamieson-McKames Pharmaceuticals, Inc., 651 F.2d 532, 537 (8th Cir.1981) (footnotes omitted), cert. denied, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); see, e.g., 21 U.S.C. § 351(a) (regulating manufacture), § 351(b) (regulating strength, quality, and purity), § 352(a), (b), (f), (g), (h), (p) (regulating packaging and labeling), § 355 (new drug approvals), § 360b (regulating new animal drug approvals). Regulations implementing the Act are quite extensive. See generally 21 C.F.R. Pts. 200-599. For example, good manufacturing practices for the preparation of human and animal drugs are set forth in detail. See 21 C.F.R. Pts. 210, 211.[2] The veterinary drug industry is certainly regulated as extensively as the vehicle dismantling industry, which the Supreme Court has held to be "closely regulated." See Burger, 482 U.S. at 703-04, 107 S.Ct. at 2644-45.
 
 
 20
 Although duration of a particular regulatory scheme has "some relevancy" in determining whether an industry is closely regulated, Burger, 482 U.S. at 705, 107 S.Ct. at 2645, "it is the pervasiveness and regularity of the federal regulation that ultimately determines whether a warrant is necessary." Donovan, 452 U.S. at 606, 101 S.Ct. at 2542. The pervasiveness and regularity of the current regulatory scheme is sufficient to make it "closely regulated" under Burger wholly apart from any consideration of duration.[3]
 
 
 21
 FDA regulation of Argent's industry also meets the three enumerated criteria of Burger. First, there is "a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." Burger, 482 U.S. at 702, 107 S.Ct. at 2644. Argent argues that in some respects animal drug provisions are less stringent than human drug provisions, compare 21 U.S.C. § 355 (new drugs) with 21 U.S.C. § 360b (new animal drugs), and that regulation of animal drugs is primarily motivated by economic considerations rather than human safety, see 1 James T. O'Reilly, Food and Drug Administration § 16.01, at 16-3 & n. 9 (2d ed. 1995). Neither argument suggests that the government lacks a substantial interest in ensuring the safety and effectiveness of animal drugs. Congress has seen fit, either for human safety or for economic reasons, to regulate animal drugs to ensure their safety and effectiveness. Whether the interest is human health, economic health, or both, we conclude that it is substantial.
 
 
 22
 Second, "the warrantless inspections [are] 'necessary to further [the] regulatory scheme.' " Burger, 482 U.S. at 702, 107 S.Ct. at 2644 (quoting Donovan, 452 U.S. at 600, 101 S.Ct. at 2539). Unannounced inspections have a deterrent effect; forcing inspectors to obtain a warrant before inspection might frustrate the purpose of the Act by alerting owners to inspections. See id. at 702-03, 107 S.Ct. at 2643-44; Biswell, 406 U.S. at 316, 92 S.Ct. at 1596. Moreover, this court has recognized the "need for swift governmental action to remove misbranded products from the stream of commerce." United States v. An Article of Device "Theramatic", 715 F.2d 1339, 1343 (9th Cir.1983) ("Theramatic II "), cert. denied sub nom. Cloward v. United States, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 685 (1984). Thus, warrantless searches and seizures are necessary to further the regulatory scheme that ensures the integrity of veterinary drugs.
 
 
 23
 Finally, the regulatory scheme, " 'in terms of the certainty and regularity of its application, [provides] a constitutionally adequate substitute for a warrant,' " thereby satisfying the third Burger requirement. Burger, 482 U.S. at 703, 107 S.Ct. at 2644 (quoting Donovan, 452 U.S. at 603, 101 S.Ct. at 2540). "[T]he regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." Id. Taken as a whole, the Act, the accompanying regulations, and the Supplemental Rules for Certain Admiralty and Maritime Claims provide a constitutionally adequate substitute for a warrant. Inspections are conducted with notice furnished at the time, and their scope is limited by statute. 21 U.S.C. § 374(a)(1). Seizures are limited to drugs that are adulterated or misbranded, 21 U.S.C. § 334(a)(1), the articles to be seized must be described "with reasonable particularity," Supplemental Rules C(2), and the government's complaint must be "verified on oath or solemn affirmation," id. Moreover, in most cases, the seizure is subject to the approval of one of the Food and Drug Administration's district offices, the appropriate office (or "center") in the Food and Drug Administration headquarters, the Food and Drug Administration's Office of Enforcement, the Office of the Chief Counsel, and the Department of Justice. See FDA Regulatory Procedures Manual, ch. 6, at 173-85 (Aug. 1995).[4]
 
 
 24
 We conclude, therefore, that Argent's operation, as regulated by the FDA, falls within the Colonnade-Biswell exception to the Fourth Amendment's warrant requirement.
 
 
 25
 V. The Particularized Seizure and the Warrant Requirement of
 
 
 26
 the Theramatic Case
 
 
 27
 Argent next contends that, even if it is a "closely regulated" industry for purposes of the Colonnade-Biswell exception, that exception does not apply to the seizure in this case.
 
 
 28
 To the extent that Argent's argument suggests that the Colonnade-Biswell exception applies only to inspections and not to seizures, the argument is untenable. It is true that Burger discussed its criteria for "closely regulated" industries in terms of "inspections," but it also approved the use of evidence seized in the course of the inspection. 482 U.S. at 716, 107 S.Ct. at 2651. Moreover, both Colonnade and Biswell involved seizures of contraband discovered during the unwarranted inspections. Biswell held that, because the unwarranted inspection was constitutionally permissible, "[t]he seizure of respondent's sawed-off rifles was not unreasonable under the Fourth Amendment." 406 U.S. at 317, 92 S.Ct. at 1597. Thus, Colonnade-Biswell extends to seizure without warrant of what may be inspected without warrant, when Congress so authorizes.
 
 
 29
 The argument that Argent most vigorously asserts, and the one that was accepted by the district court, is based on our decision in United States v. Device Labeled "Theramatic", 641 F.2d 1289 (9th Cir.1981) ("Theramatic I "). In Theramatic I, we held that the Fourth Amendment was violated by the FDA's seizure from a physician's office of an allegedly misbranded medical device pursuant to a warrant issued under the Supplemental Rules. Id. at 1295. We emphasized that the physician was entitled to the protection of the Fourth Amendment in his office just as he was in his home. Id. at 1292. We recognized that some administrative searches could be conducted on the strength of a warrant issued on less than probable cause, but the government in Theramatic I was not conducting random inspections to enforce administrative standards; it was "searching a particular physician's office to seize a particular, identified device." Id. at 1294. Finally, we said that the Colonnade-Biswell exception to the warrant requirement did not apply because "the search at issue here was not part of any statutory program to inspect physicians' offices." Id. at 1295.
 
 
 30
 We do not draw from Theramatic I the same lessons that Argent and the district court did. The problem with the seizure in Theramatic I was that it was effectuated by an impermissible invasion of the physician's right of privacy. That is why we were careful in Theramatic I to point out that the case involved not only a seizure, "but a paradigmatic search--a physical intrusion by the U.S. Marshal into [the physician's] office." Id. at 1291. We also stated:
 
 
 31
 It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer.
 
 
 32
 Id. at 1292 (quoting G.M. Leasing Corp. v. United States, 429 U.S. 338, 354, 97 S.Ct. 619, 629-30, 50 L.Ed.2d 530 (1977)) (emphasis added). The Colonnade-Biswell exception did not apply because it is based largely on the diminished expectation of privacy in a closely-regulated industry, see Burger, 482 U.S. at 700, 107 S.Ct. at 2642-43, and the physician in Theramatic I was not closely regulated by the FDA.
 
 
 33
 The district court, however, accepted Argent's interpretation of Theramatic I, concluding that "[a]lthough a well-defined scheme for inspecting pervasively regulated businesses may survive Fourth Amendment scrutiny, the protection against unreasonable searches and seizures may nevertheless prevent government agents from returning to conduct a particularized search and seizure without first obtaining an ordinary warrant." The District Court held that Theramatic I forbade agents from searching "a particular business to seize particular, identified chemicals and drugs."
 
 
 34
 Theramatic I 's reference to a particularized search, however, was made to point out that the search conducted there was not an administrative search similar to those designed to insure sanitary housing conditions, see Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), or workplace safety, see Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); that was not what the FDA was doing. But a wholly separate point (which we thought was even clearer) was that the physician was not "closely regulated" by the FDA and therefore was not subject to the Colonnade-Biswell exception. Theramatic I, 641 F.2d at 1295.
 
 
 35
 Thus it is the invasion of privacy, not the particularity of the seizure, that is the relevant difference between Argent's case and Theramatic I for purposes of the Colonnade-Biswell exception. Argent, being closely regulated by the FDA, has a diminished expectation of privacy that was not violated by the seizure. We attach no significance to the fact that the FDA "returned" to execute its in rem warrant some time after its last inspection. If a random, unannounced inspection does not violate Argent's Fourth Amendment right of privacy, we see no reason why the unannounced execution of a warrant under the Supplemental Rules would do so. The seizure is from the premises of a closely regulated manufacturer and is conducted within the regulatory scheme in the manner Congress has authorized. There is no need to brigade the seizure with an inspection in order to legitimize it; Argent's expectation of privacy has not been violated.
 
 VI. Conclusion
 
 36
 Under the Colonnade-Biswell exception to the Fourth Amendment, Argent had a "reduced expectation of privacy." Burger, 482 U.S. at 702, 107 S.Ct. at 2643. As a consequence, the seizure of Argent's drugs from its premises pursuant to a warrant issued in accordance with 21 U.S.C. § 334 and Supplemental Rule C did not violate the Fourth Amendment.
 
 
 37
 REVERSED.
 
 
 
 [1]
 Although Burger pertained only to a search, the Colonnade-Biswell exception applies to searches and seizures. See Colonnade, 397 U.S. at 77, 90 S.Ct. at 777 (warrantless search and seizure of liquor held constitutional); Biswell, 406 U.S. at 317, 92 S.Ct. at 1597 (warrantless search and seizure of firearms held constitutional); see also infra part III
 
 
 [2]
 These regulations include personnel qualifications and responsibilities, 21 C.F.R. §§ 211.25, 211.28; buildings and facilities specifications, 21 C.F.R. §§ 211.42-211.58; equipment specifications, 21 C.F.R. §§ 211.63-211.72; production and process controls, 21 C.F.R. §§ 211.100-211.115; packaging and labeling controls, 21 C.F.R. §§ 211.122-211.137; holding and distribution procedures, 21 C.F.R. §§ 211.142, 211.150; laboratory controls, 21 C.F.R. §§ 211.160-211.176; and requirements for recording and reporting, 21 C.F.R. §§ 211.180-211.198, to name but a few
 
 
 [3]
 We note, however, that the original 1906 Food and Drugs Act provided for regulation of animal drugs. Act of June 30, 1906, ch. 3915, § 6, 34 Stat. 769
 
 
 [4]
 On occasion, in the case of so-called "direct reference seizures," headquarters review is skipped. See FDA Regulatory Procedures Manual, ch. 6, at 176