**BRONCO WINE COMPANY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF TREASURY, the Bureau of Alcohol, Tobacco and Firearms, Defendants.**

**No. CV–F–96–6354 REC DLB.**

United States District Court,
E.D. California.

Aug. 1, 1997.

Malcolm S. Segal, Segal & Kirby, Sacramento, CA, Frank C. Damrell, Jr., Damrell, Nelson, Schrimp, Pallios, and Ladine, Modesto, CA, E. Vincent O'Brien, Buchman and O'Brien, for Plaintiff.

D. E. Bensing, U.S. Dept. of Justice, Washington, DC, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

COYLE, District Judge.

In December of 1996, this court issued an order denying Plaintiff Bronco Wine Company's Motion for Temporary Restraining Order ("TRO"). Plaintiff had argued that Defendant Bureau of Alcohol, Tobacco and Firearms ("BATF" or "the Agency") should be enjoined from restricting the sale and distribution of its wine across the nation. In rejecting Plaintiff's argument, this court held that not only did Plaintiff fail to show that irreparable harm would result absent the issuance of a TRO, but also that Plaintiff had not demonstrated that it was likely to succeed on the merits of its various constitutional and statutory claims. The time has now come for this court to actually entertain the merits of Plaintiff's arguments. This time around, however, the merits are somewhat different than were presented in December. And this time, Bronco has named several other individual defendants to its suit.[1]

The focus of this case involves the BATF's decision to promulgate and enforce regulations relating to the labeling of wine. Specifically, the regulations strictly require wine producers to provide the appellation of origin or a statement describing the origin of the grapes used in each bottle of wine. The BATF's regulations, and their particular effect on Bronco will be described in detail below. First, however, it is necessary to review the facts giving rise to this suit.

### I. *Factual Background*

The factual background of this case is far more simple than the legal issues it presents.

---

**1.** The named individual defendants include John W. Magaw, Director of the BATF, Gerard W. Larusso, Acting Chief of the Alcohol and Tobacco Programs Division, Edward O'Toole, Special Operations Inspector of the BATF, and Janet Calhoon, Group Supervisor of the BATF.

In 1994, Bronco purchased the Rutherford Vineyards trade name. The same year, one of its bottlers applied for and received approval from the BATF of Certificates of Label Authority ("COLAs") to produce wine under the Rutherford Vineyards trade name. The COLAs contained an additional appellation of "Napa Valley." From 1995 to 1996, Bronco's bottlers submitted at least eleven new COLA applications that were approved by BATF. These COLA applications had a "California" appellation instead of the earlier "Napa Valley" appellations. In reliance on these COLAs, Bronco sold wine with either the Napa Valley or California appellations on its bottles. However, at all times, as a part of the brand name, the bottles contained reference to "Rutherford," a separate appellation of origin.

On October 7, 1996, the BATF issued a detention order and seized approximately 32,000 cases of Rutherford Vineyards wine. The detention order was issued pursuant to 26 U.S.C. § 5311. On October 10, 1996, the BATF released the detained wine, but issued a formal warning to Bronco and its bottling companies that any further bottling of Rutherford Vineyards wine or sales in interstate or foreign commerce would be considered willful violation of federal law, particularly 27 C.F.R. § 4.39(i). Notwithstanding attempts by Bronco to resolve this issue directly with the BATF, on December 11, 1996, the BATF issued its final decision confirming its restrictions against the sales of Rutherford Vineyards wines.

Although several events in this litigation have transpired since the BATF's final decision, none are worth reviewing in detail for the purpose of the instant motion. On March 17, 1997, Bronco filed its First Amended Complaint. The Complaint essentially states four separate claims, and is filed against the BATF, and several of its officers. The Complaint alleges that (1) the BATF regulation pertaining to misleading geographic brand names, 27 C.F.R. § 4.39(i) is arbitrary and capricious under the Administrative Procedures Act, 5 U.S.C. § 706(2)(B); (2) the regulation is inconsistent with the Lanham Act, 15 U.S.C. § 1052(a); (3) that

the regulation deprives Plaintiff of the use of its trade name without due process of law; and (4) that the three individually named Defendants violated Plaintiff's due process rights. Defendants now move to dismiss this Complaint. Upon careful review of the oral and written record, the court hereby grants in part and denies in part Defendants' motion to dismiss, consistent with the opinion herein.

II. *Statutory Framework*

The Federal Alcohol Administration Act ("FAAA"), codified in 27 U.S.C. § 201, et seq., establishes the regulatory scheme which governs the bottling, packaging and labeling of its wine. Passed in 1935, the legislative intent of the FAAA was to prohibit practices in the alcoholic beverages industry "that Congress had judged to be unfair and deceptive, resulting in harm to both competitors and consumers." *Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1547 (10th Cir.1991). The BATF is the agency authorized by the FAAA to promulgate regulations which further the policies expressed in the statute. The regulations are found in title 27 of the Code of Federal Regulations, and provide that the BATF is to reject labels which convey erroneous information as to the age, identity, origin or other characteristics of the produce in question. 27 C.F.R. § 5.34.

The regulations in Title 27 set forth the conditions for use of an appellation of origin on a wine label. Section 4.25a(e) provides that an American viticultural area, (which is a delimited grape growing region whose boundaries have been recognized and defined in another part of the chapter), may be used as an appellation of origin only if the appellation has been approved under Part 9 of the regulations, *and* not less than 85 percent of the wine is derived from grapes grown within the boundaries of the viticultural area. Directly relevant to the instant action is Section 4.39(i), which regulates the use of brand names of viticultural significance. "Rutherford Vineyards" is one such brand name, as it incorporates the name of a viticultural area[2] as part of the brand name. Section 4.39(i) provides:

---

**2.** The name "Rutherford" was approved as an American Viticultural area in 1993. *See* 27

(1) Except as provided in subparagraph 2, a brand name of viticultural significance may not be used unless the wine meets the appellation of origin requirements for the geographic name.

(2) For brand names used in existing certificates of label approval [COLAs] issued prior to July 7, 1986:

(i) The wine shall meet the appellation of origin requirements for the geographic area named; or

(ii) The wine shall be labeled with an appellation of origin, in accordance with § 4.34(b) as to location and size of type of either:

(A) A county or viticultural area, if the brand name bears the name of a geographic area smaller than a state, or

(B) A state, a county, or a viticultural area, if the brand name bears a state name; or

(iii) The wine shall be labeled with some other statement which the Director [of the BATF] finds to be sufficient to dispel the impression that the geographic area suggested by the brand name is indicative of the origin of the wine.

In a nutshell, § 4.39(i) provides that a brand name of viticultural significance may not be used unless the wine either (1) meets the appellation of origin requirements for the geographic area named; (2) is "grandfathered," in that the brand name is one for which a COLA was issued prior to July 7, 1986, and is qualified with an appellation of origin; or (3) is grandfathered (in the same manner above), and the Director of the BATF decides that some other statement is sufficient to dispel the suggestion that the geographic area suggested by the brand name is indicative of the origin of the wine.

In concluding that Bronco was not complying with § 4.39(i), the BATF first noted that the Rutherford wines with the "California" appellations did not meet the appellation of origin requirements of the Rutherford viticultural area. The Agency further reasoned that neither of the grandfathering provisions

C.F.R. § 9.133.

applied to Rutherford Vineyards since the BATF's search revealed that no brand name of "Rutherford Vineyards" was ever used on COLAs issued prior to July 6, 1986. Moreover, the BATF recognized that even if the grandfathering provisions had applied to Rutherford Vineyards wines, Bronco would still not be in compliance with § 4.39(i). Because the labels in question neither bear a county or viticultural area appellation of origin nor any other statement to dispel the suggestion that the wines are from the Rutherford area, the grandfathering provisions had not been satisfied. Simply stated, the BATF informed Bronco that the Rutherford Vineyards brand name may only be used to label wines which are entitled to the Rutherford appellation of origin. In other words, the Rutherford Vineyards brand name may not be applied to bottles unless 85 percent of the wine in the bottles is made from grapes grown in Rutherford.

### III. *Defendants' Arguments In Support Of Motion To Dismiss*

Defendants move to dismiss Plaintiff's Complaint for various reasons. First, Defendants argue that Bronco cannot maintain a private cause of action against an agency of the United States under the Lanham Act. Second, Defendants argue that Section 4.39(i) is not arbitrary or capricious, and is an agency decision entitled to judicial deference. Moreover, Defendants contend that Bronco's procedural due process claim should be dismissed because Bronco has not been deprived of any property right, and that Bronco has been afforded ample process for acts taken by the Agency in conjunction with the Rutherford Vineyards wines. Finally, Defendants argue that the individual BATF defendants should be dismissed from this action because they are entitled to qualified immunity. Each of these arguments will be addressed in turn.

### A. *Lanham Act*

■ Plaintiff first argues that the BATF's actions are in violation of the Lanham Act, 15 U.S.C. § 1052(a). Bronco argues that Sec-

tion 1052(a) provides that the geographic misdescriptiveness of a trademark used on a wine label does not bar registration if the trademark meets the other applicable criteria. Section 1052(a) states, in pertinent part:

No trademark . . . shall be refused registration . . . unless it . . . consists of a geographical indication which, when used on or in connection with wines or spirits, identifies a place other than the origin of the goods and is first used on or in connection with wines or spirits by the applicant on or after [January 1, 1996].

Thus, by declaring that geographic misdiscriptiveness is illegal, the BATF has erected a bar to registration that thwarts Congressional will, Plaintiff urges. Furthermore, the Statement of Administrative Action makes clear the BATF's duty to amend its regulations to treat geographically misdiscriptive statements consistent with the intent expressed in the Agreement: "The United States will implement the Agreement's provisions on geographical indications for wine and spirits through the labeling regulations of the Bureau of Alcohol, Tobacco and Firearms of the Department of Treasury. The Agreement specifically recognizes that the rights in geographic indications of wine and spirits may be enforced through administrative action." 1994 U.S.Code Cong. & Admin. News at 4299.

However, as Defendants point out, the portion of the Lanham Act upon which Plaintiff relies does not provide a private cause of action against an agency of the United States. Section 1052(a) was amended as a part of the Uruguay Round Agreements Act of 1994, Pub.L. 103–465, 108 Stat. 4809. This statute was enacted to implement the trade agreements concluded in the Uruguay round of trade talks. The purpose of this provision was to ensure that U.S. trademark law complied with particular provisions of the Agreement on Trade Related Aspects of Intellectual Property under the Uruguay Round. Left untouched were existing provisions of the U.S. law on geographic names, such as 15 U.S.C. § 1052(e) and the FAAA.

That there is no private cause of action is clear, Defendants insist. Section 102(c) of the Uruguay Round Agreements Act, 19 U.S.C. § 3512(c), bars any person other than the United States from having any cause of action under the Uruguay Round Agreements and the enabling legislation:

No person other than the United States—

(A) shall have any cause of action or defense under any of the Uruguay Round Agreements or by virtue of congressional approval of such an agreement, or

(B) may challenge, in any action brought under any provision of law any action or inaction by any department, agency, or other instrumentality of the United States, any State, or any political subdivision of a State on the ground that such action or inaction is inconsistent with such agreement.

Bronco's related argument, that the instant action is brought under the APA, rather than the Uruguay Round Agreements Act, cannot carry the day. Although at first glance it seems plausible, a careful review reveals its flaws. It is true that generally the APA provides a cause of action for parties who challenge an agency decision as violative of a law. However, in the case at hand, the law which Bronco points to, the Uruguay Round Agreements Act, clearly and unambiguously states that there may be no action by a private party, brought under any law, to enforce its provisions. Simply put, the provision of the Uruguay Round Agreements Act which strips private plaintiffs of a cause of action trumps the Administrative Procedures Act's grant of a cause of action.

Furthermore, even if there was a private cause of action, Plaintiff has misread the Lanham Act, the Agency urges. The statute addresses the circumstances under which trademarks may or may not be registered with the Office of Patents and Trademarks, and does not impliedly override otherwise valid federal laws and regulations. Indeed, 19 U.S.C. § 3512(a)(2) makes this point abundantly clear—it specifically provides that the Agreements and the associated enabling legislation shall not be "construed . . . to amend or modify any law of the United States."

The court does not address Plaintiff's Lanham Act claim on the merits because the

court is satisfied that Plaintiff cannot bring a cause of action under the Lanham Act at all.

## B. *Arbitrary and Capricious Regulations*

■ Bronco additionally challenges the BATF's geographic brand name regulation, 27 C.F.R. § 4.39(i). Defendant first argues that this argument is not encompassed within the reading of Bronco's First Amended Complaint, and thus should be rejected out of hand. The court refuses to do so. The Complaint alleges: "Defendants' decision to deprive Bronco of the right to use and rely upon its Rutherford Vineyards trademark, trade name and other property interests in bottling, labeling, and distributing Rutherford Vineyards wine is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law' in violation of the APA." Complaint, at 4. The Complaint continues by describing Bronco's injuries as a result of Defendants' decision to enforce Section 4.39(i). Under the liberal standards of notice pleading, this statement, although inartful, is sufficient to state a challenge to Section 4.39(i) as violative of the APA.

Defendants readily concede that their motion does not address a direct challenge of Section 4.39(i). In their Reply Brief, Defendants inform the court that "[w]ere such a claim properly presented, BATF would compile the rulemaking record for the regulations in question [] and the court would then determine if the regulations had a rational basis under traditional APA standards ... However, at this juncture, BATF will limit its discussion to Bronco's argument that it lacks statutory authority to promulgate viticultural area regulations." Reply Brief, at 20. It appears from Plaintiff's Opposition to Defendant's Motion to Dismiss, that Plaintiff does indeed challenge the BATF's regulations. However, because Defendant has not addressed the issue of whether the regulations are arbitrary, the court will not, at this time, grant Defendants' motion to dismiss this claim.

Defendants continue by addressing Bronco's related argument that the BATF has limited authority pursuant to 27 U.S.C. § 205(e)(5) to regulate "brand names." 27 U.S.C. § 205(e)(5) provides, in pertinent part, that the FAAA authorizes regulations:

with respect to ... labeling ... (1) as will prohibit deception of the consumer with respect to such products or the quantity thereof and as will prohibit irrespective of falsity, such statements relating to age, manufacturing processes, analyses, guarantees, and scientific or irrelevant matters as the Secretary of Treasury finds to be likely to mislead the consumer; (2) as will provide the consumer with adequate information as to the identity and quality of the products, the alcoholic content thereof ..., the net contents of the package, and the manufacturer or bottler or importer of the product; ... (4) as will prohibit statements on the label that are disparaging of a competitor's products or are false, misleading, obscene or indecent; (5) as will prevent deception of the consumer by use of a trade or brand name that is the name of any living individual of public prominence, or existing private or public organization ....

■ Bronco reads this provision to create a distinction between the regulation of "statements" and "brand names." Plaintiff argues that while the BATF can regulate statements which create the possibility of consumer deception, it cannot regulate brand names, and by doing so, it has acted arbitrarily. Plaintiff's position is rejected. As the BATF points out, 27 U.S.C. § 205(e)(1) and (2) authorize the BATF to promulgate regulations which both prohibit consumer deception, and provide information to consumers with regard to, among other things, the identity and quality of wines.

## C. *Procedural Due Process Claim*

Bronco additionally argues that its right to procedural due process has been violated. In so arguing, Bronco seems to be attacking both the BATF's summary detention of the near 32,000 cases of wine, and its subsequent act of informing Bronco that it might risk suspension of its basic permit should it continue to disregard the Agency's regulations. Defendants counter Plaintiff's argument on two separate and persuasive grounds. First, Defendants point to regulations which autho-

rize a summary detention and assert that such detentions are constitutionally permissible. Second, Defendants note that aside from the detention, no property interest has yet been deprived, and thus due process rights have not been implicated.

### 1. *The Detention of Wine*

■ The BATF notes that its authority to summarily detain the wine is found in 26 U.S.C. § 5311. Section 5311 provides:

> It shall be lawful for any internal revenue officer to detain any container, containing or supposed to contain, distilled spirits, wines, or beer, when he has reason to believe that the tax imposed on such distilled spirits, wines or beer has not been paid or determined as required by law, or that such container is being removed in violation of law; and every such container may be held by him at a safe place until it shall be determined whether the property so detained is liable by law to be proceeded against for forfeiture; but such summary detention shall not continue in any case longer than 72 hours without process of law or intervention of the officer to whom such detention is to be reported.

Consistent with this provision, the BATF detained 32,000 cases of wine for 72 hours. Once this time period expired, the BATF lifted the detention.

Bronco argues that this section is inapplicable because it refers to seizures by Internal Revenue officers of wine for which no taxes have been paid. Furthermore, Plaintiff asserts that the statement which allows summary detention of a "container [] being removed in violation of law" is equally inapplicable because the word "removed" is a tax assessor's term of art. Moreover, because the BATF's authority stems not from the Internal Revenue Code ("IRC"), but rather from the FAAA, Defendants' reliance on Section 5311 is misplaced, Plaintiff urges. Finally, because the FAAA only authorizes regulation of interstate sales, the BATF agents overstepped their bounds by regulating intrastate sales in addition to interstate sales.

Plaintiff's position is again misguided. The plain language of Section 5311 is not limited to authorizing detentions for the failure to pay taxes, but rather extends to instances where containers are removed in violation of law. Forfeiture can result from regulatory violations of the IRC, Defendant notes. And the regulations relating to wine, found at 27 C.F.R. Part 24, specifically provide that they are promulgated under the authority of the Internal Revenue Code.

In addition, Plaintiff's groundless assertion that only internal revenue officers may exercise the power described in Section 5311 should also be rejected, the Agency insists. BATF inspectors are vested with all the powers and responsibilities of "internal revenue officers" including those found in Section 5311. In 1972, when the BATF was established as a separate Bureau, the Acting Secretary of Treasury expressly delegated internal revenue powers to the BATF and its officers. *See* Treasury Department Order No. 120–01, 37 Fed.Reg. 11696 (June 10, 1972). Paragraph 5(c) of the Treasury Department's Order expressly states that the term "internal revenue officer" shall include all officers and employees engaged in enforcing the laws administered by the BATF.

Equally meritless is Plaintiff's assertion that the term "removal" is a tax assessor's term of art. In their Reply Brief, Defendants cite several instances of the use of the term in other contexts. Plaintiff's failure to provide the court with persuasive reasons for concluding that "removal" is a term of art coupled with Defendants' citation of the term in other contexts suggests that this court should follow Defendants' interpretation of the provision.

Finally, Plaintiff's argument that the BATF exceeded its authority by detaining intrastate sales is also unavailing. Since the BATF's detainer authority provided in Section 5311 is grounded in the IRC rather than the FAAA, in detaining intrastate sales, the BATF properly exercised its authority, the Agency insists. Accordingly, Plaintiff's arguments should all be rejected, Defendants conclude. The court agrees.

■ Even if Defendants properly exercised their authority under Section 5311, Plaintiffs might still have an argument that

the summary detention of the cases of wine was unconstitutional. Before depriving a person of a property interest, due process requires that an agency give him adequate notice that a decision is being considered and an opportunity for a hearing. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Thus, the issue is whether the government should have provided Bronco with notice and a hearing before detaining the wine. Defendants correctly note that notwithstanding the requirements of due process, exceptions exist for summary governmental actions which are taken pursuant to police powers. *See Gun South, Inc. v. Brady,* 877 F.2d 858, 867–68 (11th Cir.1989). This is particularly true for industries which are heavily regulated, such as the alcohol industry. *Id.* Moreover, both the Supreme Court and the Ninth Circuit have recognized that, in the interest of public health, the government may seize mislabeled and misbranded products without a hearing being afforded to the property owner. *See Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *U.S. v. Argent Chemical Laboratories, Inc.,* 93 F.3d 572, 576 (9th Cir.1996).

In the end, this court concludes that Bronco's due process rights were not violated by the detention. It was done upon the BATF agents' reasonable belief that its regulations were being violated. Such violations did in fact occur. The length of the detention was also not unreasonable—after 72 hours, the detention was lifted. In light of the BATF's duty to ensure that consumers are not deceived, the court is satisfied that the BATF's actions pass constitutional muster.

#### 2. *The October 10, 1996 Warning Letter*

Bronco further asserts that the October 10, 1996 warning letter sent by Defendant LaRusso, wherein Bronco was warned that any sale or shipment of the Rutherford Vineyards wines would constitute a "willful violation of the FAAA," violated its right to due process. Specifically, Bronco asserts that the BATF's decision effectively revoked COLAs issued to Bronco without notice and a hearing.

Plaintiff's argument is rejected. The BATF has always maintained, and continues to maintain, that the COLAs in question have not been revoked. To the contrary, Rutherford Vineyards wine may be sold, as long as it complies with the Agency's regulations. An agency's decision to enforce regulations whose effect may be more stringent than envisioned by a plaintiff does not amount to a violation of due process. To so conclude would effectively eviscerate the enforcement powers of the agency which are so central to its functions.

■ That there was no due process violation in this case is clear for another reason. The BATF's letter simply informed Bronco of steps it might take should Bronco continue to engage in activity that the Agency believed would violate the law. At this point, no property interest had been deprived. In fact, no action has been taken against Bronco's basic permit, and if it were, the BATF assures the court that Bronco would be provided with extensive procedural protections. Indeed, the Agency did not even have to provide such a warning—it could have taken final action, and then provide a hearing later. That it chose to inform Bronco of its errors should not inure to the detriment of the government. Thus the only function that this letter served is to make this case ripe for judicial review. However, it did not implicate the Due Process Clause because no property right had been deprived.

Simply put, Defendants' motion to dismiss Bronco's procedural due process claim is granted.

#### D. *Bivens Claims Against Individual Defendants*

■ Bronco's final claim is asserted against the individual BATF agents. Plaintiff claims that these individuals violated Bronco's due process rights by seizing the wine and constructively revoking the COLAs. At the outset, this claim is dismissed, because, as discussed above, there is no underlying due process violation.

Even if there were a due process violation, however, the individual defendants would still be dismissed because they are entitled to a

defense of qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court made clear that a government official performing discretionary functions is immune from civil suit unless he violates a clearly established constitutional or statutory right that an official in his position would reasonably be aware of. Thus, whether a defendant is entitled to qualified immunity involves two distinct inquiries: (1) was the right that was violated "clearly established"; and (2) did the defendant act reasonably from an objective standpoint.

Because there is a dearth of cases involving either Section 4.39(i) of Section 5311 of the IRC, Defendants correctly assert that Bronco's alleged right to be free from detention and to avoid the requirements of the BATF's regulations could not be "clearly established." Indeed, no court has ever held that section 4.39(i) is invalid or pre-empted by any other law, including the Lanham Act. Likewise, no court has ever held that 26 U.S.C. § 5311 cannot be used to detain mislabeled wine, or that a winemaker is entitled to a hearing prior to such detention. As a result, the individual defendants could not have violated clearly established law, and are also dismissed on this ground.

Accordingly, IT IS ORDERED that:

(1) Defendants' Motion to Dismiss Plaintiff's Lanham Act claim is GRANTED, WITH PREJUDICE;

(2) Defendants' Motion to Dismiss Plaintiff's challenge to Section 4.39(i) as arbitrary and capricious under the APA is DENIED;

(3) Defendant's Motion to Dismiss Plaintiff's procedural due process claim is GRANTED, WITH PREJUDICE;

(4) Defendants Larusso, O'Toole and Calhoon are DISMISSED from this case.